## TAYLOR *v.* UNITED STATES.

*(Circuit Court, E. D. Tennessee, N. D. March 17, 1891.)*

1. CLERK'S FEES—ACKNOWLEDGMENTS.

The acknowledgment is the separate act of each and every party executing the instrument, and the clerk of a federal court is entitled to a distinct fee, as prescribed by Rev. St. § 828, for each defendant and surety whose acknowledgments he takes to a bail-bond.

2. SAME—AUTHENTICATION OF ORDERS BY SEAL AND CERTIFICATE.

The copy of an order directing the marshal, under Rev. St. § 855, to pay witness and jury fees, or of *mittimus* writs issued out of court, should be authenticated by seal and certificate, for which the clerk must be allowed proper fees.

3. SAME—"FOR FILING ANY OTHER PAPER."

"Discharge tickets," issued out of the district attorney's office, officially notifying the clerk that certain government witnesses are no longer required, are properly filed by the clerk as "other papers," within Rev. St. § 828, and he is entitled to collect the specified fee therefor.

4. SAME—AFFIDAVITS OF SERVICE BY WITNESSES.

Affidavits of service by government witnesses **are properly administered by the** clerk, and he is entitled to charge therefor.

5. SAME—FILING COMMISSIONER'S PAPERS IN CRIMINAL CASES.

Under Rev. St. U. S. § 1014, providing for the examination of persons accused of offenses against the United States before a commissioner of the circuit court, or other magistrate of any state, agreeably to the usual mode of process in such state, and that copies of the process shall be returned into the clerk's office, together with recognizances of witnesses for their appearance, the clerk is entitled to a filing fee for each separate paper, and not to one fee only in each case.

6. SAME—ORDER TO BRING PRISONER TO COURT.

Orders made by the court upon the marshal to bring prisoners to court for trial who have been committed by commissioners to jails of other counties are not within the provision of Rev. St. § 1030, that no writ is necessary to bring into court any prisoner or person in custody, but that it shall be done upon order, and no fee shall be charged therefor by the clerk or marshal, which relates solely to prisoners and

witnesses while in attendance on court, and the clerk is entitled to charge the proper fees for making and authenticating the same.

7. SAME—"DOCKETS, INDEXES," ETC., IN CONTEMPT CASES.
    The provision of Rev. St. U. S. § 828, giving certain fees for "making dockets and indexes, taxing costs," etc., in any "cause," applies to proceedings by the United States against witnesses for contempt, and such fees are a legitimate charge by the clerk.

8. SAME—ORDERS OF CONTINUANCE.
    Orders of continuance from day to day in criminal trials are within Rev. St. U. S. § 828, giving the clerk for entering any order, continuance, etc., for each folio, 15 cents.

At Law.

*R. N. Hood*, for plaintiff.

*H. B. Lindsay*, Dist. Atty., for the United States.

JACKSON, J.   This is an action brought by petition filed December 23, 1889, for the recovery of fees due plaintiff as clerk of this court for services rendered by him on behalf of the United States between July 1, 1887, and the date of the filing of the petition.   The proceeding is instituted under the provisions of the act of congress approved March 3, 1887, (24 St. 505,) and all the jurisdictional requirements of the statute seem to have been complied with.   The defendant, for answer to this petition, admits the performance by the clerk of all the services the fees for which are here sued for, but denies "that the same were necessarily done, or that there is or was any law authorizing the payment of the fees sued for, or that the defendant is indebted to petitioner in any amount on account thereof."   The fees here in controversy have all been duly and upon oath presented to and approved by the court in his regular quarterly or semi-annual fee-bills, as required by the act of congress approved February 22, 1875, (Supp. Rev. St. pp. 145–147,) and have been disallowed at the treasury department in Washington by the first comptroller, and have not been paid.

| | |
|---|---:|
| The amount sued for by petitioner is the sum of  -        -        - | $1,429 30 |

But the following items therein have been allowed at the treasury since the commencement of the suit, and are of course withdrawn:

| | |
|---|---:|
| Certificates and seals on *mittimus* copies,        -        - $    3 60 | |
| Captions to terms in final records,    -        -        -        52 35 | |
| Orders, recognizances, and *mittimus* writs,    -        -        24 45 | |
| Affidavits of witnesses as to fees,    -        -        -        28 35 | |
| Fees on 71 *capias* writs,        -        -        -        -        88 75 | |
| Making    -        -        -        -        -        - $197 50 | |
| And the clerk in sub-item "J" has made an error of        3 00 | |
| | 200 50 |
| Leaving in controversy the sum of  -        -        -        - | $1,228 80 |

1. Items 1 and 2 of this petition are fees for taking the acknowledgments in criminal cases of defendants and their sureties to bail-bonds for appearance before the court for trial, such defendants having been duly arrested by the marshal under proper process, and taken before the clerk for bail.   In six of the accounts in which acknowledgment fees are dis-

allowed a single fee for acknowledgment by the defendant and his sureties has been allowed by the comptroller, "for which the clerk is entitled to 25 cents," according to the treasury statement, while in the other account all such fees are disallowed. Previous to the late first comptroller of the treasury, this fee for an acknowledgment taken to a bail-bond by each and every party to it was never questioned, and all such fees were always allowed and paid; and the rulings on this point during his administration and since, as this record shows, have not been uniform. The statute fee for this service, prescribed for clerks (Rev. St. § 828) and commissioners, (Id. § 847,) is as follows: "For taking an acknowledgment, 25 cents." Now, what is an acknowledgment? The definition given in 1 Bouv. Dict p. 56 is: "The act of one who has executed a deed, in going before some proper officer or court, and declaring it to be his act or deed." It is the act, not of the officer, but of the person acknowledging, and one person can acknowledge only for himself, not for another, even though that other, at the same time, and before the same officer, acknowledge to the execution of the same instrument. "Taking an acknowledgment" is the act solely of the court or officer receiving from the party who has executed the bond or other instrument his formal admission of record that the execution thereof by him is his veritable act and deed. The function of an acknowledgment by a party to a writing is to authorize it to be given in evidence against him, or to be otherwise used in court, without further proof of its execution, as in case of the forfeiture of bail, and other like proceedings; and the act of the party acknowledging is strictly personal, and can affect only himself and his own liability. Now, it is not an uncommon occurrence in our courts for the principal to acknowledge the bail-bond before one officer, and the sureties before another, for the convenience of the parties; nor for one commissioner to take the acknowledgments of some of the sureties, and a different commissioner to take those of the others. And this is especially true of the acknowledgments of a deed for record by different grantors, in different states or localities, before different officers, at different times, as all know who are familiar with conveyancing. The "form for commissioner's accounts for fees," found in the Register Department of Justice, (Ed. 1866,) p. 285, "compiled by authority of the attorney general," and issued periodically from his office, embodies "instructions" for the court officers; and the "regulations prescribed by the accounting officers of the treasury department" to be observed in rendering accounts against the government have for nearly 20 years, in terms, recognized the claim of the plaintiff here. After providing a fee for "drawing bond for appearance of defendant," the form in its very next line prescribes the charge for "taking ——— acknowledgments at 25 cents each." In *Barber* v. *U. S.*, 35 Fed. Rep. 886–888, the court allowed the commissioner there suing the fee of 25 cents for each person, principal and surety, acknowledging the bill, and and such was the ruling in *Rand* v. *U. S.*, 36 Fed. Rep. 671–674, in *Crawford* v. *U. S.*, 40 Fed. Rep. 446, and in *McKinstry* v. *U. S.*, Id. 813, (per Justice LAMAR and Judge PARDEE,) as well as in *Goodrich* v. *U. S.*, 42 Fed. Rep. 392–394, and *Marvin* v. *U.*

*S.*, 44 Fed. Rep. 405–411. I am aware of the adverse decisions of Judge Toulmin in *Strong* v. *U. S.*, 34 Fed. Rep. 17, and *McKinistry* v. *U. S.*, Id. 211, in the district court. But in the latter case, on motion for a new trial, the fees were afterwards allowed upon argument before the circuit justice and the circuit judge, thus establishing the commissioner's right to them in the fifth judicial circuit. And in *Heyward* v. *U. S.*, 37 Fed. Rep. 764, a fee for but one acknowledgment was allowed for all the acknowledgments to a bond; but this is the only case so holding, and the only other one reported which does not allow the fee for each acknowledgment. Upon principle, therefore, as well as upon authority, the amount here charged by the plaintiff ($46.50) ought to be recovered by him.

2. The next items (3 and 13) to be considered are fees for certificates of the clerk, and seals of the court to certain copies of orders made by the court, directing the marshal to pay jurors, witnesses, etc., and amounting to only $8.40. Section 828, Rev. St., prescribes the rate of such fees as follows: "For * * * making any record, certificate, return, or report, for each folio, fifteen cents," and "for affixing the seal of the court to any instrument when required, twenty cents." These services are rendered under Rev. St. § 855, which is as follows: "In cases where the United States are parties, the marshal shall, on the order of the court to be entered on its minutes, pay to the jurors and witnesses all fees to which they appear by such order to be entitled, which sum shall be allowed him at the treasury in his accounts,"—and the charges are according to these provisions of the statute. The folio fees for making the copies were not questioned at the department, as, confessedly, they were proper and necessary; but only the fees for their authentication. This very question was represented to Judge Shiras for decision in *Van Duzee* v. *U. S.*, 41 Fed. Rep. 571–576, who says:

"What is the evidence of such order, except a copy thereof duly certified to by the clerk, with the proper seal attached? The copy, to be of value, must be duly certified to, and the usual and proper form is to attest the correctness thereof by the signature of the clerk, with the seal attached. * * * Therefore, when a copy of the order directing the payment of witnesses and jurors is furnished to the marshal, it should be so authenticated as to be evidence to him, and also for him,—a need may arise,—of the order as it stands upon the records of the court, and this can only be done by having the copy duly certified by the clerk, with the seal attached."

In *Jones* v. *U. S.*, 39 Fed. Rep. 410–412, the fees for such certificates were allowed, but those for the seals were disallowed, though with hesitation, and without any reason being given for the disallowance, or any distinction assigned for a difference between them. And a similar fee for authentication of copies of orders approving accounts of court officers has been allowed in *Stanton* v. *U. S.*, 37 Fed. Rep. 254; *Erwin* v. *U. S.*, Id. 470; and *Goodrich* v. *U. S.*, 42 Fed. Rep. 394; *Marvin* v. *U. S.*, 44 Fed. Rep. 405,—while no reported case found has ever held otherwise. And upon principle a court of record can only speak from its record, and, when the original cannot be used, can only speak, outside the

court, from a copy of the record duly authenticated. Its clerk is custodian of its seal, and, while he and its other officers, including the judge himself, may change, its record and its seal always remain. Such is the law now, and such was the common law, the general principle being that when copies of a court record are to be used as evidence elsewhere, the highest form of authentication known to the law should be employed; and this is generally so by statute as to copies obtained for such use from the department offices, the land-offices, the patent-office, foreign courts, state courts, etc., which all have seals, the proof of the copy being "by the attestation of the keeper * * * and the seal of his office annexed." Rev. St. U. S. §§ 460, 461, 886, 888, 889, 892, 893, 905–907.

3. The like items (6 and 15) for authentication of copies of *mittimus* writs issued out of the court, and amounting to $23, should also be allowed the plaintiff upon like reasoning. The fees for the copies themselves have been allowed. Section 1028 of the Revised Statutes provides that—

"Whenever a prisoner is committed to a sheriff or jailer by virtue of a writ, warrant, or *mittimus*, a copy thereof shall be delivered to such sheriff or jailer as his authority to hold the prisoner, and the original writ, warrant, or *mittimus* shall be returned to the proper court or officer, with the officer's return thereon."

The original writ must be issued under the seal of the court, (Rev. St. §§ 911, 912,) and a copy of it, of course, can only be certified by the clerk, who is custodian of the seal, who alone can issue the writ, and who has charge of and makes the record authorizing its issuance. A copy not authenticated by such certificate and seal would not in law be a compliance with the statute quoted. The record here shows, however, that other like items, originally embraced in the petition, have since its filing been allowed and paid, and therefore there is really no contest about the items.

4. The items (4 and part 16) for filing discharge tickets of the district attorney amount to $119.80. They are made on formal blanks, addressed to the clerk, dated in and issued out of the district attorney's office, and signed by him, whereby the clerk is officially notified that the witness of the government named therein "is hereby discharged as a witness on behalf of the United States," either finally or until the term or date specified, and this is filed by the clerk, the fee for which is charged at 10 cents, under section 828 of the Revised Statutes, which gives, "for filing and entering every declaration, plea, or other paper, ten cents." For many years witnesses for the government in the districts of Tennessee have been summoned to attend the federal courts in strict conformity to section 877, Rev. St., which is as follows:

"Witnesses who are required to attend any term of a circuit or district court on the part of the United States shall be subpœnaed to testify generally on their behalf, and not to depart the court without leave thereof, or of the district attorney; and under such process they shall appear before the grand or petit jury, or both, as they may be required by the court or the district attorney."

As a matter of fact and of practice the court has really nothing whatever to do with the discharging of government witnesses, nor can the clerk know when the district attorney has no further need of a particular witness. One may be, and often is, a witness in many cases. The clerk must know by some proper evidence when the attendance of each witness is no longer needed, in order to safely certify his fees to the marshal for payment, else all would remain in attendance to the end of the session at useless and enormous expense, and in contravention of the very intent and spirit of the act quoted. If witnesses in government cases, as in other suits, were severally summoned in each one, of course the clerk could safely certify their fees at the close of the trial; but under this statute and our practice the district attorney can alone know when a government witness is at liberty "to depart the court," and this discharge notice or ticket is the clerk's evidence and only information that any such witness has the statutory "leave of the district attorney" to so depart. No comptroller, except one, ever disallowed or questioned these fees, and the government would seem to be in no attitude to now question them, after the services for which they are prescribed by law have been performed by the clerk at the instance and request of the highest law officer of the court, under a practice sanctioned and adopted by himself.

Judge BENEDICT in *Fish* v. *U. S.*, 36 Fed. Rep. 677–681, uses this language in allowing the claim of a stenographer in criminal cases under the district attorney's employment, which is peculiarly pertinent here:

"The equity of the petitioner's case is strong. He rendered the services in question in the same manner in which he had rendered similar services for a long period of time, for which he had always been paid by the government. No intimation was conveyed to him that his employment was considered irregular. His services were accepted in behalf of the government, and his bills allowed by the district attorney."

And in the case *In re Clerk's Charges*, 5 Fed. Rep. 440, it was held (to cite from the syllabus) that "services by a clerk of a United States court, whether ordered by the duly-appointed officers of the government, or imposed by a statute of the United States, are proper charges against the United States, if such services are covered by the terms of the fee-bill." These fees, therefore, ought to be allowed without any question.

5. Affidavits of these government witnesses are taken severally by the clerk as to the number of days they have attended court and the number of miles traveled, the fees for which affidavits amount to $67.50, (item 12 and part of 16.) These services are usual and highly proper, and the fees therefor are according to the statute. The claim of the witness to his fees is thus based upon his oath as to the facts, and the evidence of the clerk's care in the premises is preserved as a part of the records of the court. Similar items, originally embraced in this petition, have since been allowed by the accounting officers of the treasury, as this record shows, so that the justice of this item and the plaintiff's right to recover is conceded by defendant.

6. Of course, the small error in addition of $3 (item 11) against the clerk, made in the comptroller's office, is allowed, just as was the clerk's

like error in his favor in his petition disallowed to him heretofore. It would seem that one ought not to be compelled to resort to the courts of the United States for the correction of such errors as this.

7. Item 5 seeks a recovery of $285.40, fees for filing commissioner's papers in criminal cases in which there have been examinations of persons for violation of the federal statutes, who have been held to bail to answer indictments or other modes of prosecution in this court therefor. These fees have been charged at the statute rate of 10 cents for each paper so filed, but the comptroller has disallowed for all filings except a single one in each. These papers, the petition shows and the plea admits, were each separately filed, and so marked by the clerk. The authority for such preliminary examinations is found in section 1014, Rev. St. It is as follows:

"For any crime or offense against the United States, the offender may, by any * * * commissioner of a circuit court to take bail, * * * or other magistrate of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the cognizances of the witnesses for their appearance to testify in the case."

The provisions of the Code of Tennessee prescribe and regulate with great minuteness all the details attending such examinations "of persons charged with public offenses" before justices of the peace and other officers. Code Tenn. (Mill. & V.) §§ 5844–5900. And section 5898 thereof contains this provision:

"All examinations and undertakings by parties or witnesses taken under this chapter shall, together with the warrant and other papers, be returned by the magistrate to the court at which the defendant or witness is bound to appear, by the first day of said court."

In reality, these provisions of the Tennessee Code and of the United States Revised Statutes are in no way different, except that "copies" of "process," instead of "originals," are required to be sent to the court. The word "process," as used in this section, (Rev. St. § 1014,) must, *ex necessitate*, mean any writ issued by the commissioner for service, and includes the warrant, the subpœnas, and the *mittimus* writs, temporary and final; and the "recognizances" or bonds of the defendant and witnesses in the case are equally within the very terms of this statute. All such fees have always been allowed, except under a single comptroller, since the enactment of the statute in 1853. Besides, the rules of the federal courts in this state provide that such commissioner at the close of a case shall "transmit, as soon thereafter as possible, all the papers in the case to the clerk of the court for inspection and preservation." This matter has been the subject of consideration by several of the circuit courts. Judge BREWER ruled in *Goodrich* v. *U. S.*, 35 Fed. Rep. 194, that a clerk was entitled to the fee of 10 cents for filing a report required of him by law, and a like fee for filing each of the 148 vouchers filed therewith. He says:

"It is contended by the government that this report and vouchers should be taken as one paper, and he be allowed for filing that paper only; but in fact each voucher was a different paper, and related to a distinct transaction, and the statute allowed him, for filing and entering every declaration, plea, or other paper, ten cents. Of course this means for each separate paper that is filed, and therefore he is entitled to the full amount claimed."

In *Dimmick* v. *U. S.*, 36 Fed. Rep. 83, the exact question as to filing papers sent up by commissioners was before the court, and the amount claimed was allowed for the filing of each paper, on the ground that "it was manifestly the duty of the clerk to file all the papers referred to," and "it was equally his duty to mark these papers filed in the usual manner.. * * * It would be an unsafe precedent to follow the suggestion of the comptroller that only the outside paper or wrapper should be filed, the entire package or file being made up of separate papers, although appertaining to the same case or matter." Upon substantially the same reasoning the following cases have been decided against the United States: *Erwin* v. *U. S.*, 37 Fed. Rep. 470–481; *Jones* v. *U. S.*, 39 Fed. Rep. 410–412; *Marvin* v. *U. S.*, 44 Fed. Rep. 405. In *Van Duzee* v. *U. S.*, 41 Fed. Rep. 571, the court thus comments upon the ruling of the late comptroller:

"These were not parts of one paper before the commissioner, but were separate and distinct, and they remain so when sent to the clerk. He is under no obligation to fasten them together, and if for convenience he does so, there is no magic in a brass fastening, or the more venerable red tape, which can convert these papers into one. * * * As I can see no legal foundation for the bundling theory advanced on behalf of the defendant, the conclusion is that the plaintiff is entitled to recover· the statutory fee for filing the several papers."

There is no doubt, therefore, that the petitioner's claim here is just and legal, and the decree in this case should so award.

8. The item (No. 7) of $29.35, for copies of orders made by the court upon the marshal to bring prisoners to the court for trial, is confined to instances only where the prisoners have been committed by commissioners for trial to the jails of counties other than that in which the court is held. After the marshal has so executed the commissioner's *mittimus* writ, it is returned to him, and a copy transmitted to the clerk. Rev. St. § 1014. The writ upon its return is *functus officio*, and no further service can be had under it. The copy filed with the jailer is his. The marshal cannot take the prisoner from such jail, and transport him, it may be for a long distance, without process. Nor do I think that section 1030 of the Revised Statutes applies to such cases. It is as follows:

"No writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody; but the same shall be done on the order of the court or district attorney, for which no fee shall be charged by the clerk or marshal."

This provision and section 877, Rev. St., above quoted, are taken from section 3 of the act of February 26, 1853, (10 St. at Large, 169,) and were originally a single clause, the first sentence of which applied to the summoning of witnesses generally on behalf of the United States,

their attendance at the court before the grand and petit juries, as required by the court or district attorney, until discharged by the court or district attorney. Then follows the provision in question, that "no writ shall be necessary to bring into court any prisoner or person in custody, [meaning, of course, a witness held in default of bail,] or for remanding him from the court into custody." All this clause of the original section of the act seems, therefore, to relate to prisoners and witnesses after their arrival, and while in attendance upon a session of the court. The separation of the provisions into different sections (877 and 1030) of the Revision in no way affects their construction. Rev. St. § 5600. It would be unreasonable to presume that this provision was intended by congress to impose upon a marshal the burden and expense of transporting prisoners from distant counties to the court for trial without compensation, or without the allowance of even such expenses as would be necessarily incurred by him. Here the removals were made under an "order" of the court, as the statute provides. And in construing this statute the court, in *Erwin* v. *U. S.*, 37 Fed. Rep. 470–487, unhesitatingly comes to the same conclusion, after a careful and painstaking examination of the whole subject, and a review of all the statutory provisions. This construction, limiting the operation of section 1030 to the place where the court is held, seems to be the only reasonable one which can be given without working hardships never contemplated by congress. And where the construction of these fee statutes "admits of two interpretations, the words should be construed liberally in favor of the officer, and not strictly in favor of the United States. *McKinstry* v. *U. S.*, 40 Fed. Rep. 813, (opinion per Judges LAMAR and PARDEE.) These fees should therefore be allowed the plaintiff here.

9. An item (No. 8) of $600 was disallowed the plaintiff by the comptroller for "making dockets and indexes, taxing costs, etc.," in cases against witnesses for contempt. The fees for such services are prescribed by section 828, Rev. St., which gives $3 in a case in which there is issue and testimony, $2 where there is issue but no testimony, and $1 in cases dismissed or discontinued. The statute is general in its terms, and applies to any "cause," making no distinction or exception. The record here shows that these cases were brought at the instance of the government, as plaintiff; that they were docketed and indexed just as other cases in the court are. In 1 Bouv. Dict. "cause" is defined to be, "in practice, a suit or action; any question, civil or criminal, contested before a court of justice." In *Erwin* v. *U. S.*, 37 Fed. Rep. 470, 479, 480, where the question whether a clerk was entitled to fees for making final records in such cases was decided in the affirmative, Judge SPEER, citing *Blyew* v. *U. S.*, 13 Wall. 581; *Ex parte Kearney*, 7 Wheat. 38; and *Hayes* v. *Fischer*, 102 U. S. 121,—says: "A proceeding for contempt is a distinct and independent suit." And to the same effect is *Goodrich* v. *U. S.*, 42 Fed. Rep. 392–395. This disallowance by the accounting officers cannot be properly sustained, and the amount is of course allowed plaintiff.

10. The item (No. 10) of $6.15 is for entering "respites of jury," or orders of continuance from day to day while criminal trials were in prog-

ress. Such orders are not only proper, but necessary, and a convicti·n at the close of a long trial would doubtless be a nullity where the reco: d did not show such entries. Section 828, Rev. St., gives the clerk, "for entering any * * * order, continuance, etc., for each folio, fifteen cents,"—the rate of fee charged here for the work actually done. There was no merit whatever in the disallowance by the comptroller, and the clerk is entitled to judgment for the same.

11. The remaining item of the petition is for the recovery of fees for making final records in criminal cases, the department disallowances extending only to certain portions of such records. In some instances fees for recording specified papers are wholly disallowed, and in others only partially so; the accounting officers assuming for themselves to determine the number of folios contained in a given portion of the record, without regard to fact. The question of the necessity of making final records was not mooted at the treasury, is not denied here, and of course could not be. Archb. Crim. Pl. 127; 1 Bish. Crim. Proc. §§ 905–913; Rev. St. U. S. § 750, U. S. Sup. Ct. Rules, Admiralty 52, Law 8. Rule 12 of the circuit courts of Tennessee, promulgated in 1864, with others, by Judge TRIGG, on the re-establishment of the courts about the close of the war, enumerates what in law and equity cases shall be entered upon the final record. *Blain* v. *Insurance Co.*, 30 Fed. Rep. 667. These records were always required at common law, (3 Bl. Comm. 24,) have always been made in the courts of the United States and of this state until a recent act of the legislature made them unnecessary except in certain instances. But that act, of course, has no application to criminal records in the federal courts of Tennessee. *U. S.* v. *Reid*, 12 How. 361; *U S.* v. *Jones*, 10 Fed. Rep. 469; *U. S.* v. *Kilpatrick*, 16 Fed. Rep. 765. The amount of $4.05, disallowed without the assignment by the comptroller of any reason therefor in his statement to the clerk, is of course allowed him here, as well as the item of $42, his fees, charged at the rate of 15 cents per folio, under the statute, for the usual captions to the records, and the items of $7.80 and $66.30, like fees for recording *capias* writs, etc. As to these last three items, there is really no contest between the parties plaintiff and defendant here, as similar items, originally sued for in the petition, have been withdrawn because since allowed in Washington. There is, however, no doubt whatever that these captions and *capias* writs are essentially necessary portions of the final record in a criminal case. The sum of $64.70 and $6.90 for entering upon the record the bail-bonds of defendants should be allowed. The bail-bond in a criminal case is the same, in effect, as the defendant's recognizance, the former being entered into before an officer authorized to take bail, and filed in the case, and the latter a similar undertaking of record. As to the necessity of an entry of the recognizance upon the final record, there can be no doubt, and it cannot be that the mere form of the undertaking can create any difference in this regard. Besides the *capias* writ, with the marshal's return thereon, like the original writ or summons at law, was always entered upon the final record, and the bail-bond is technically a part of the return of the marshal to the *capias*, and is returned by him

and filed with it. The return always shows when the writ is executed, the arrest of the defendant, and either his commitment for trial, or that he was taken before some proper officer before whom bail was given, and the bail returned to court in defendant's stead, his sureties therein becoming in law his custodians or jailers. The remaining four amounts, aggregating $441.90, are fees for entering upon the final record the papers filed in the case, and sent to the court by the commissioner, who held the defendant in bail upon preliminary examination. As has been seen, these papers are required by statute to be transmitted to the court and filed. They are in fact the written evidence of the origin of the proceedings in the case. It is a mistake to suppose that the filing of an information by a district attorney, or the return by the grand jury of an indictment, is the institution of a criminal case where the defendant has been previously held to bail. The former can never be filed in court except upon the probable cause shown by a preliminary examination, the papers of which are in practice always filed with it, while the indictment in such a case is the legal statement by the grand jury of the charge which the defendant is already in court to answer either in his own proper person or by bail. Nearly all the criminal prosecutions in this court are for violations of what is known as the "Internal Revenue Laws of the United States." Previous to July 5, 1884, the statute of limitations within which such violations could be prosecuted, was five years, but by an act of congress approved on this date, (23 St. at Large, 122,) the limitation, with but few exceptions, was reduced from five to three years; the act containing the proviso "that where a complaint shall be instituted before a commissioner of the United States within the period above limited, the time shall be extended until the discharge of the grand jury at its next session within the district." Under this provision, the date of the indictment might not determine whether the prosecution was instituted within the time limited by law, and its commencement must of course always be judicially ascertained by the record. It follows, therefore, that these papers, used on such preliminary examinations, and filed in the case, become a part of it, and will often contain the sole evidence upon which this question can be resolved. Hence, it would seem that upon being filed they are portions of the proceedings, and thereby become a part of the necessary technical record. As such, it is the duty of the clerk to enter them upon the final record. His official oath requires the clerk to "truly and faithfully enter and record all the orders, decrees, judgments, and proceedings of the court." Rev. St. § 794.

In *Erwin* v. *U. S.*, 37 Fed. Rep. 471–489, Judge SPEER allowed fees for entering upon the final record the "affidavit of arrest, marshal's return, and finding of commissioner of probable cause, * * * commitment to jail in default of bond, recognizance in cases where given, and justification of surety;" being in fact all the papers used on preliminary examination except the subpœnas and abstract of the testimony taken. And in *Van Duzee* v. *U. S.*, 41 Fed. Rep. 571–577, it was ruled that "the final record shall include the order made by the commissioner binding the defendant to appear before the grand jury." These are the only cases re-

ported since the act of March 3, 1887, I have been able to find containing rulings upon this precise question. For the plaintiff, it may well be said here that by no act of his do these papers become a part of the record of the case, and there is no intimation that there has been any effort on his part to make these records unnecessarily prolix. He has rendered the sevices charged for, the law prescribes a fee for the same, and he should be allowed these fees, less the amount charged ($162.80) for recording subpœnas, which were never, in equity and admiralty, entered upon the final record of a cause. Rev. St. § 650; Sup. Ct. Ad. Rule No. 52.

Perhaps upon this record a decision ought to have been reached at once, upon the ground that the defendant has shown no mistake of the court in the original approval of the accounts containing these fees, as held in *U. S.* v. *Jones,* 134 U. S. 483–488, 10 Sup. Ct. Rep. 615, when Mr. Justice LAMAR, in delivering the opinion of the supreme court in a suit brought by a commissioner against the United States for his fees, says:

"The approval of a commissioner's account by a circuit court of the United States, under the act of February 22, 1875, (18 St. 333,) is *prima facie* evidence of the correctness of the items of that account, and, in the absence of clear and unequivocal proof of mistake on the part of the court, it should be conclusive."

But as such a course would leave these questions to be hereafter decided upon the presentation of subsequent accounts, containing like items for approval by the court, it has been deemed the better course to thus examine the matter at length here, and the result is that upon the whole a decree should be entered for the petitioner, in accordance with the foregoing findings, for the sum of $1,066, and costs, and it is accordingly so ordered.