WILLIAM A. PENNELL

*v.*

THE LAMAR INSURANCE COMPANY *et al.*

1. PRACTICE—*exceptions to master's report.* Where a claim is allowed by a master in chancery in a cause referred to him to take proof of claims, the proper practice is to except to the allowance before the master, and if this is not done the parties objecting can not be heard on exception to the master's report in the circuit court.

2. CREDITOR'S BILL—*enures to benefit of all who prove claims, whether made parties or not.* Where a creditor's bill is filed against an insurance company by a creditor, for himself, and for the use of other creditors, for the discovery of assets, and the entire fund is taken possession of by the court and held for the benefit of all the creditors, and an order is made for all creditors to present and prove their claims before the master, all creditors may present their claims and participate in the fund, whether they are named as parties in the bill or not, or whether judgment, specialty or simple contract creditors.

| | |
|---|---|
| 73 | 303 |
| 128 | 285 |
| 73 | 303 |
| 33a | 240 |
| 73 | 303 |
| 41a | 34 |
| 73 | 303 |
| 149 | 155 |
| 73 | 303 |
| 53a | 627 |
| 54a | 465 |
| 73 | 303 |
| 60a | 228 |
| 60a | 470 |
| 73 | 303 |
| 63a | 279 |
| 64a | 262 |
| 73 | 303 |
| 78a | 640 |
| 73 | 303 |
| 178 | 541 |
| 73 | 303 |
| 182 | 491 |
| 183 | 255 |
| 73 | 303 |
| 92a | [1]246 |
| 92a | [1]345 |
| 73 | 303 |
| 94a | [1]383 |
| 73 | 303 |
| 193 | [1]132 |
| 73 | 303 |
| 194 | [1]232 |
| 73 | 303 |
| 213 | [1]419 |
| e113a | [1]637 |

304 PENNELL *v.* LAMAR INSURANCE Co. *et al.* [Sept. T.

Opinion of the Court.

3. Such a bill is in substance a suit by all the creditors, and if brought within the time limited by a policy for the institution of a suit for any loss under it, obviates the necessity of a suit at law by the policyholder upon his policy, and he will be permitted to prove his loss before the master in chancery, although at the time of making such proof he is not specifically named in the bill as a party, and the time limited by the policy for bringing a suit thereon may have elapsed.

4. INSURANCE—*proof of loss*—*when failure to make, is caused by agent of company.* A fire insurance policy required the holder to give notice, in writing, to the company or its agent, forthwith, of any loss, and as soon after as practicable to deliver a particular account of the loss or damage, signed by the holder and verified by his oath. A fire occurred, and the policyholder forthwith gave notice to the agent of the company, in writing, and applied to him within a reasonable time to have a formal statement made out as required by the policy, and was informed by the agent that it was useless, as the company was entirely bankrupt; and relying upon this information, and for no other reason, he omitted to make the formal proof of loss required by the policy: *Held*, that upon a creditor's bill filed against the company by another, for the benefit of all the creditors, the holder of the policy was not precluded from proving his claim before the master in chancery.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Mr. W. S. COY, for the appellant.

Messrs. SHUFELDT, BALL & WESTOVER, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The Lamar Insurance Company was incorporated by act of the General Assembly of the State. By their charter and amendments thereto they were authorized to increase their capital to $5,000,000. One-fifth of this stock was required to be paid down or within nine months, and the remainder of the stock was to be paid as the officers should make calls. It was further provided that if the paid-in capital should become impaired or diminished, the stockholders should be liable for the whole amount of their subscriptions. Somewhere about the last of the year 1869, or first of the year 1870, the company

appointed agents at Normal. Appellant obtained from these agents a policy of $2500, on his premises at Normal, dated on the 12th of April, 1871. The insurance was against loss by fire, and was to continue for one year from that date. On the 14th day of February, 1872, the property was destroyed by fire. Appellant on the next morning took his policies to the agents, having two in other companies, and they prepared his papers and made out notices and proof of the loss. But one of the agents at the time informed appellant that the Lamar company had been burned out, all their papers were lost and the company was entirely bankrupt, and it was useless to do anything in the matter. After the destructive fire in Chicago, of the 8th and 9th of October, 1871, the Lamar Insurance Company ceased to do business, and had no office in Chicago. Efforts to find their office in Chicago of course proved unavailing. It appears that another agent who came to Normal told appellant that the company was worthless.

On the 3d day of October, 1872, a creditor's bill was filed against the company by two of its creditors, in the Superior Court of Cook county, for the discovery of assets of the company. The bill was taken as confessed, and George Chandler was appointed a receiver to take charge of the property and claims of the company. He, on the 18th day of January, 1873, reported that he had the effects of the company in his possession, that he had the stock bonds to the amount of $1,600,-000; also, that the company had a claim against the People's Insurance Company to the amount of the liability of the Lamar Insurance Company. That they had outstanding debts to the amount of $150,000, which were liable to be paid under that proceeding. He also asked of the court that an assessment be made on the stockholders, sufficient to pay the debts of the company. At the same time the court found that the stockholders were liable for the debts of the company, and ordered that the receiver collect enough from the stockholders to pay its debts.

The court also ordered that out of the moneys so collected the receiver should pay to complainants, and to all other

creditors of the Lamar Insurance Company who should come in and file their claims under the decree, *pro rata*, or share and share alike, until all demands against and liabilities of the corporation should be paid in full. And a reference was made to the master to take proof of claims, with directions to advertise on what day he would take proof. On the last day of October, 1873, the court ordered that claimants must prove their claims within ninety days, or be forever barred from participating in the assets of the company. On the 23d day of the next December, appellant presented his claim, made proof, and it was allowed by the master. On the 5th day of March, 1874, the master reported that the company was indebted to appellant in the sum of $2500. On filing the report, exceptions to it were filed: first, that there was no proof of loss filed, or notice of loss given; second, the suit was not brought in one year after the loss; third, that the finding was against the evidence; fourth, that the finding should have been against the claim; that the report was based on improper evidence. On the hearing on the exceptions, they were sustained and the claim disallowed. To reverse that decree, this appeal is prosecuted.

It is first urged that, to have been heard and determined by the court below, the exception to the allowance of the claim of appellant should have been taken before and disallowed by the master; that until such an exception is thus taken and disallowed, the parties can not be heard on exceptions in the circuit court. This is announced as the better practice in the cases of *McClay* v. *Norris*, 4 Gilm. 370, *Brockman* v. *Aulger*, 12 Ill. 277, and other cases in this court. Such a practice as is indicated in these cases is more consistent, more speedy and saves costs, all of which is desirable and should be enforced in practice; and failing to take exception before the master, the objection should be regarded as waived. The practice imposes no hardship on the parties, as the master can always fix a day when he will hear exceptions to his report, when the parties should attend and be heard on their allowance, and if either party is dissatisfied with the master's decision, on re-

questing him, he would certify the evidence touching such items as were excepted to and decided by him, to the court, where his decision can be reviewed, and the exception allowed or rejected, as might appear to be required by the law.

It is next urged that the creditor's bill did not enure to the benefit of appellant, but only to those who came into court and, by leave, became complainants to that bill. The extent to which creditors' bills have been passed on in this court seems to have been to remove clouds from title in aid of an execution at law, and not in cases where the entire fund is in possession of the court, and held as a fund for the benefit of all the creditors of the defendant.

The power of courts of chancery to appoint receivers seems to have been called into action at an early day, and has been and still is regarded as inherent to the jurisdiction of courts of chancery, both in Great Britain and this country, and here, as there, it has been regarded as a power of great utility. There is a great variety of exigencies in which it is necessary to call it into action, to prevent fraud, save the subject of litigation from injury, or preserve it from destruction. The power is said to depend on sound discretion, and in a case fit and reasonable; and it may be added that its exercise should be controlled by caution and prudence.

It is said in Daniell's Chancery Practice, Vol. 1, p. 128: "The joining several creditors in the same suit, although it might save the expense of several suits by different creditors, might, nevertheless, where the creditors are numerous, be productive of great inconvenience and delay, by reason of the danger which would exist of continued abatements. Courts of equity have, therefore, adopted a practice which, at the same time that it saves expense of several suits against the same estate, obviates the risk and inconvenience to be apprehended from joining a great number of individuals as plaintiffs, by allowing one or more of such individuals to file a bill on behalf of themselves and the other creditors upon the same estate, for an account and application of the estate of a deceased debtor, in which case the decree being made applicable

to all the creditors, the others may come in under it, and obtain satisfaction of their demands as well as the plaintiffs in the suit; and if they decline to do so, they will be excluded the benefit of the decree, and will be considered bound by acts done under its authority."

As the same reasons apply to other classes of cases as to estates of deceased persons, as we would reasonably expect, the rule has been extended to a large variety of other cases. The same author, on the next page, says: The same principle applies where the demand is against the real estate as well as the personal assets, because, strictly speaking, where an estate is liable to several incumbrances, or specialty debts, one incumbrancer, or specialty creditor, can not sue without bringing the others before the court, which, when the creditors are numerous, might be attended with great inconvenience and expense; and it has been extended to the case of creditors under a trust deed for payment of debts, a few of whom may be permitted to sue on behalf of themselves and the other creditors named in the deed for the execution of the trusts, although one creditor could not in that case have sued for his single demand without bringing the other creditors before the court."

"Upon the same principle, where the trust fund was to be distributed amongst the joint and separate creditors of a firm, a bill of this description was permitted by one creditor only, on behalf of himself and the other joint and separate creditors, although it was objected that one, at least, of each class ought to have been brought before the court." He also says that in marshaling assets, a portion of which is applicable to the payment of specialty creditors, and another portion to simple contract creditors, one of each class may file a bill on behalf of themselves and all others of both classes. He also says that a legatee may sue on behalf of himself and the other legatees.. He says, on page 131 of the same volume, that the rule is not confined to the instances of creditors and legatees, but the necessity of the case has induced the court, of late years, to frequently depart from the general rule in cases where a strict adherence to it would probably amount to a denial of

justice, and to allow a few persons to sue on behalf of a great number having the same interest. And he enumerates a variety of cases where the practice has been allowed. There is a limitation to the rule, that the suit must be beneficial to those for whom the complainant sues.

The rules of practice here announced seem to apply with full force to this case. Here is a trust fund, in which all of the creditors have an interest. The directors hold it in trust for the benefit of the creditors of the company, until they are satisfied, and afterwards the surplus for the stockholders. It·is believed that it is only by reason of the property being a trust fund that any of the creditors could invoke the aid of a court of equity, unless it were under the statute in aid of an execution at law; but, inasmuch as the bill is not given in this case, we can not know that it was under the statute; but from the decree, which is in favor of, and allows all creditors of the company to come in and prove their claims, and fixes a day by which they are required to make proof, we must infer that the proceeding was under the general chancery powers of the court. The decree also appoints a receiver, vests the title of the property in him, authorizes him to sue the stockholders, and confers on him the powers of the company derived by its charter, and requires the officers to disclose and deliver over all property, money and assets to the receiver, and that he pass in his accounts and pay out the money as the court shall direct. The decree further directs, that out of the proceeds which should come into his hands, he pay, first, the costs of the proceedings in collecting the money, then the complainants or to their solicitors, " and to all the other creditors of the said Lamar Insurance Company who shall come in and file their claims under this decree, *pro rata*, or share and share alike, until all the demands against, and liabilities of, the said corporation, shall be paid in full."

This decree indicates none of the features of a bill filed under the statute, as, instead of taking the usual steps to subject the fund to the lien of the judgment, the court reaches out and takes possession of all money, property and assets, and even takes the

powers of the company to reach assets, to pay, not only com-
plainants, but all creditors of the company. And the decree
will bear no other construction. And under it all persons who
held legal claims and demands were entitled to come in and
prove their demands. It by no means imposes it as a condi-
tion, that they shall obtain the consent of complainants and
become complainants, before they should prove their demands.
The only condition to their participation in the fund is, that
they shall be creditors and prove their demands. It is not
limited to judgment creditors, but is general, and embraces all
descriptions. And it did so for the reason that the technical
and highly artificial distinction between specialty and simple
contract debts has been long since abolished in this State, so far
as preferences are given for their payment is concerned. The
lien of a judgment will be preferred and enforced so far as it
attaches to property, but no farther, unless it, in some other
manner, by acts of the party, becomes a lien on other prop-
erty.

Daniell, in his work on Chancery Practice, vol. 2, page 864,
says: "A person coming in to claim under a decree, whether as
heir or as next of kin, or creditor, or as an individual belong-
ing to a class, must commence by bringing into the master's
office a state of facts, detailing the particulars of his case, and
the circumstances under which his claim arises. This state of
facts, in the case of a creditor coming in under the decree to
prove against his debtor's estate, must be accompanied by an
affidavit from the claimant, that the debt remains due.    *    *
It may be mentioned, in this place, that a plaintiff in a credi-
tor's suit will be required to prove his debt before the master,
under the decree." Thus it will be seen that, under the Eng-
lish practice, persons not specifically named in the bill as com-
plainants, as well as those that are, must prove their claims
before the master.

It will be observed, that in these references there is no inti-
mation that a creditor must become a party complainant before
he can prove his claim, but the contrary rule is announced.
Whatever practice other courts may have adopted, and they

usually use that best calculated to promote justice, they being the forms employed by courts to obtain justice, we think the English practice convenient, speedy, and less expensive than that of compelling creditors to become actual parties to the bill. Such a practice, after decree passed, on an order *pro confesso*, or a hearing, would be exceedingly inconvenient and clumsy when reduced to practice, whilst the English practice is simple, convenient and less expensive. It then follows, that all creditors of the Lamar Insurance Company had the right to present their claims with the proof before the master, for allowance, whether or not named as parties in the bill, or whether judgment, specialty or simple contract creditors.

It only remains to determine whether appellant's was such a claim as to entitle him to prove it against the company, and before the master under the decree. Although appellant did not give notice of his loss to the company at their office at Chicago, he did give notice to their agents at the place of the fire, and they informed him that the company was worthless, had lost all its papers, and was bankrupt. And he made inquiry, but could find no office of theirs in Chicago, nor did they have any after October 9, 1871. We are at a loss to see why appellant should do more than make a detailed statement of his loss and leave it with the agent of the company at Normal, as done in other cases, under the circumstances proved. This was notice to him, as agent of the company. Another agent made the same statement to him in reference to the condition of the company, that the other had previously done. The condition in the policy requiring notice of loss, is this: " Persons sustaining loss or damage by fire shall, forthwith, give notice thereof, in writing, to the company or to its agents; and as soon after as practicable they shall deliver as particular account of their loss or damage as the nature of the case will admit, signed with their own hands, and they shall accompany the same with their oath or affirmation, declaring the said ac- count to be true and just."

It appears that appellant did deliver to the agent of the company, on the 24th of February, 1872, ten days after the

loss, a paper containing a detailed statement of the loss. The builder's estimate was sworn to, as appears by the testimony of appellant, which, we understand, was the paper left with the agent of the company at Normal. When he applied to the agent in time to have made out a formal statement, and to have given the notice required by the policy, he was informed that it was useless and would be but a loss of time, as the company was entirely bankrupt. This information, coming from their agent, believed by him, was the sole reason why he did not make formal proofs. They, by their agent, prevented him from doing what was required by the policy; and shall they be permitted now to take advantage of and profit by this wrong? Shall appellant suffer this loss by reason of the action of their agent? Surely not. It was a mistake on the part of the agent, no doubt, but it thereby became the mistake of appellant, which he was induced to act upon by the agent of the company.

In equity mistakes of fact may, in some cases, be corrected. It is one of the heads of equitable relief. And in this case, had the representations been fraudulently made and induced such action by appellant, a court of equity would have afforded relief without any hesitation. It would have been such injustice and wrong that no court would sanction. And, although the intent was different in this case, the consequences are equally grave to appellant, and we think that, under the head of mistake, the court should afford the relief sought in this case; that it would be highly inequitable to permit the company to profit by the mistake induced by their agent. The proof was sufficient to establish the claim, unless the fact that it was not sued upon within a year, prevents it.

Was appellant precluded from proving this claim as a debt against the company, because it was presented more than one year after the loss, without bringing suit within the year? One of the conditions of the policy required the commencement of the suit within that time, or such delay should be taken as conclusive evidence that the claim is invalid. Under ordinary circumstances such a delay would be fatal to a recov-

ery; but we have seen that appellant was acting under the mistake that the company was utterly worthless, for a portion of the time; and before the expiration of the year, on application of other creditors, the court had taken hold of all the fund of this company, and it was under its control, as a trust fund, for the use of all creditors. Then what the use of bringing a separate suit in equity to be relieved from the mistake, and to be allowed to receive his debt out of the fund in court? But as we have seen by the rules of practice, he was a party to the suit then pending, as it was brought for his and the use of other creditors of the company. He was not specifically named, but we have seen that, had he not appeared and proved his claim, whether he had or not reduced his claim to a judgment, it would have been barred. This, we think, answered the condition in the policy as fully as though he had been named as a party complainant in the bill. Equity is not controlled by mere forms, but looks to the substance of things. This was, in substance and effect, a suit on behalf of appellant, and he was entitled to prove his claim before the master, and the court below erred in sustaining the exceptions.

The decree allowing the exceptions, and rejecting the claim from a participation in the fund, must be reversed, and the cause remanded.

*Decree reversed.*