Decided 16 August, 1901.

## DUNNE v. PORTLAND STREET RAILWAY CO.

[65 Pac. 1052.]

CREDITOR'S BILL—LIMITATION OF ACTION—RIGHT BY RELATION.

1. Where a creditor of an insolvent corporation files a creditor's bill against it, another creditor who subsequently makes himself a party, and proves his claim, is entitled by relation to the benefit of the suit as a party plaintiff from the beginning, and the time that elapses from the commencement of the suit to his becoming a party is not to be construed as a part of the time limited for the commencement of an action on his claim.

COMMENCEMENT OF ACTION—EFFECT OF APPEARANCE.

2. A suit or action is "commenced" so as to stop the running of the statute of limitations when the defendant enters a general appearance, without reference to the issuance of a summons.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by David M. Dunne and others against the Portland Street Railway Company and others. From a decree in favor of complainants, defendants Fred R. Strong, as executor of the estate of Joseph Holladay, and George W. Weidler appeal.

AFFIRMED.

For Fred R. Strong as executor there was a brief and an oral argument by *Mr. James Gleason.*

For Geo. W. Weidler there was a brief and an oral argument by *Mr. Geo. G. Gammans.*

For respondents there was a brief over the names of *Coovert & Stapleton, Ernest E. Merges, Chas. H. Carey, J. Couch Flanders, Williams, Wood & Linthicum,* and *Franklin P. Mays,* with an oral argument by *Messrs. Carey* and *Flanders.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

On July 7, 1894, the plaintiffs Kelly, Dunne & Company, for themselves and all other creditors of the Portland Street Railway Company, commenced this suit against the latter company, Joseph Holladay, Helen M. Halsey, William M. Ladd, and George W. Weidler, alleging in their complaint that they had recovered a judgment against the railway company for $224.29, upon which execution had been issued and returned unsatisfied; that it was the owner of a franchise to operate its railway in the City of Portland, and for some time had been operating such railway at a loss; that it was largely indebted for taxes, and to divers and sundry creditors, including the plaintiffs, and was insolvent, and, unless a receiver was appointed, its franchise would be lost, and its property dissipated; that the defendants Holladay, Halsey, Ladd, and Weidler were stockholders of the corporation, and had not paid in full for the stock held by them; that it was necessary, for the protection of the creditors of the company, that a sale be made of all of its property, including the franchise, the amount of its debts be ascertained, and the stockholders required to pay in a sufficient sum, in addition to the proceeds of the sale, to liquidate the same. The prayer is for the appointment of a receiver to take charge and dispose of the property of the corporation under the direction of the court, and to apply the proceeds thereof to the payment of the taxes and the debts of the concern; that such debts be ascertained, and the stockholders required to pay into court a sufficient sum to satisfy any amount remaining due thereon after the application of the proceeds of the property. Due service of the complaint was accepted by Charles H. Carey, "attorney for defendants," and on the same day, "the plaintiffs appearing by their attorney, Cecil H. Bauer, and the defendant appearing by Charles H. Carey, Esq., its attorney," J. C. Epperly was appointed receiver, and directed to take charge of, and under the orders of the court to sell, the property of the corporation, and to manage its business. Mr. Epperly immediately qualified, and assumed the duties of receiver, and has ever since continued to act as such.

On December 16, 1898, other creditors were permitted to join as plaintiffs, and an amended complaint was filed, which, in addition to the allegations of the original complaint, avers that J. J. Allard performed services for the defendant corporation, as horseshoer, between November 1, 1890, and May 31, 1894, of the reasonable value of $1,018, no part of which has been paid, except the sum of $550; that between August 1, 1892, and January 31, 1894, Allard & Hagey, as partners, performed similar services, of the reasonable value of $739, no part of which has been paid; that between October 11, 1890, and September 12, 1893, the plaintiffs Everding & Farrell sold and delivered to the railway company goods, wares, and merchandise of the reasonable value of $8,689.72, no part of which has been paid, except the sum of $7,930.54; that between May 9, 1891, and March 30, 1892, the plaintiffs R. & E. B. Williams and Charles H. Carey performed services as attorneys for the defendant company, of the reasonable value of $1,038.40, no part of which has been paid; that, between the first day of January, 1893, and the first day of December, 1894, the plaintiff Charles H. Carey performed services for the company, of the reasonable value of $500, no part of which has been paid. It also gives the names of all the stockholders of the corporation, the number of shares owned by each, and the amount paid thereon, and alleges the death of Joseph Holladay, and the appointment of Fred R. Strong as the administrator of his estate, and concludes with a prayer substantially the same as in the original.

After the amended complaint was filed, a summons was issued, and served upon the corporation and the other parties named as defendants. Afterwards the petitions of Thomas A. Gray, the Oregon Transfer Company, and Geo. W. Weidler, as receiver of the Willamette Steam Mill Lumbering & Manufacturing Company, to become plaintiffs, and by supplemental allegations set up their claims against the railway company, were allowed. Gray alleges that he served as secretary for the railway company, at its special instance and request, from the twenty-fifth of February, 1891, to January 9, 1899, the date

of verifying his complaint, at a salary of $50 a month, amounting in the aggregate to $4,700, no part of which has been paid. The transfer company avers that at various times between the eleventh day of November, 1890, and the second day of July, 1894, it rendered services, furnished supplies, and advanced moneys to the corporation, amounting in the aggregate to the sum of $919.13, all of which is still due and payable. Weidler avers that between the fourth day of March, 1882, and the thirtieth day of June, 1894, the company of which he is receiver sold and delivered to the railway company goods, wares, and merchandise of the reasonable value of $11,083.12, no part of which has been paid, except the sum of $8,135.19. A demurrer to the amended complaint having been overruled, Strong, as administrator of the Holladay estate, Epperly, as receiver of the railway company, and Weidler personally, joined in an answer, in which they deny, on information and belief, the claims of the several creditors, and allege that the claims of Allard & Hagey, Everding & Farrell, Williams & Carey, Gray, Weidler, as receiver, and the Oregon Transfer Company accrued more than six years prior to the time the several claimants became parties to this suit. The new matter was put in issue by a reply, and, after hearing the evidence, the court found the amounts due the several creditors, as alleged by them, excepting Gray's salary for services as secretary after the appointment of the receiver, and that the only assets of the corporation with which to pay such indebtedness was the amount remaining unpaid on subscriptions to its capital stock; that Strong, as administrator of the Holladay estate, is the owner of one thousand two hundred shares of such stock, upon which there was due and unpaid the sum of $90,250; that George W. Weidler is the owner of sixty-seven shares, upon which there was due and unpaid $5,045.07, and rendered a decree against them jointly and severally, and in favor of the plaintiffs, for the respective amounts then due to the plaintiffs, but in the case of Weidler not to exceed in the aggregate the sum of $5,040. From such decree the defendants Strong and Weidler appeal.

The only assignments of error on this appeal are: (1) The ruling of the trial court that no part of the claims of the intervening creditors is barred by the statute of limitations; and (2) in allowing Thomas Gray $2,020 for services as secretary of the defendant corporation from the time of his election to that office, in February, 1891, to the appointment of the receiver in July, 1894.

1. In support of the first point, it is contended that the statute of limitations commences to run in favor of stockholders when the debts against the corporation mature. But it is unnecessary to consider that feature at this time. The original complaint, filed by Kelly, Dunne. & Company on behalf of themselves and all other creditors, in July, 1894, was in the nature of a creditors' bill to obtain a judicial administration of the affairs of the insolvent corporation, and to enforce the personal liability of its stockholders, and is to be considered, therefore, as a suit on behalf of all the creditors of the company who should thereafter make themselves parties. In such a suit, a creditor making himself a party and proving his claim is entitled by relation to the benefit of the suit as virtually a party plaintiff from the beginning, and the time that elapsed from the commencement of the original suit to his becoming a party thereto will not be considered as a part of the time limited by the statute for the commencement of a suit or action on his claim. "A bill filed by one creditor, as plaintiff, in behalf of himself and others," says Mr. Angell, "will prevent the statute from running against any of the creditors who came in under the decree. Every creditor has, after the filing of a bill, an inchoate interest in the suit to the extent of its being considered as a demand, and to prevent his being shut out because the plaintiff has not obtained a decree within the six years": Angell, Lim. (5 ed.) § 331. This doctrine is recognized and enforced in cases similar to the one in hand by the Supreme Court of the United States in *Richmond* v. *Irons,* 121 U. S. 27 (7 Sup. Ct. 788), and of Ohio in *Barrick* v. *Gifford,* 47 Ohio St. 180 (21 Am. St. Rep. 798, 24 N. E. 259), and referred to by Mr. Thompson in his recent work on Corporations (3

Thomp. Corp. § 3771). It is unimportant, therefore, so far as the statute of limitations is concerned, at what time the intervening creditors become parties, if the original suit was commenced in time; for, as each creditor appeared and proved his claim, he had a right, as said in *Richmond* v. *Irons*, "to be considered as a party complainant from the beginning."

2. It is insisted, however, that the suit was not commenced, within the meaning of sections 14 and 15 of the statute (Hill's Ann. Laws), until the summons was served on the defendant corporation, December 16, 1898, after the amended complaint had been filed, and therefore all debts accruing six years prior to that time are barred by the statute. The record shows, however, that immediately upon the filing of the original complaint in 1894 an application was made for the appointment of a receiver, and on the hearing thereof the defendant appeared by "its" attorney, and a receiver was appointed, who subsequently took possession of all the property of the corporation, and managed and disposed of it under the direction of the court. Under these circumstances the contention that the court was without jurisdiction because the journal entry does not name the particular defendant for which Mr. Carey appeared seems rather technical. He was the attorney of the corporation at the time, and, whether the word "defendant" in the journal entry is a clerical error or not, his appearance was evidently intended to be for the corporation, and was deemed sufficient, both by it and the court, to warrant an order sequestering the property, business, and franchise of the corporation, and appointing a receiver, who operated the railway until the property was disposed of. We are of the opinion that Mr. Carey's appearance waived service of the summons upon the corporation, and that the suit was commenced, within the meaning of the statute, at the time of such appearance in 1894. There is no contention that any part of the claims involved in this suit accrued more than six years prior to that time; hence the plea of the statute of limitations was properly overruled.

There remains to be considered the objection to the claim of Mr. Gray. . On October 26, 1875, the board of directors of the

defendant corporation adopted a resolution, which has never been repealed, fixing the salary of the secretary of the company at $50 a month. On the twenty-fifth day of February, 1891, Mr. Gray was elected secretary, and continued to serve in that capacity up to the time of his intervention in the suit. He had charge of the office of the company from the time of his election to the appointment of the receiver, received and paid out all the moneys due to and from it, and acted as treasurer and bookkeeper, and had general supervision of its office affairs. His own testimony, as well as that of Mr. Carey, the attorney of the company, and one of its directors, shows that, independent of the resolution of the corporation, his services were reasonably worth the amount allowed by the trial court. It is contended, however, that because he was secretary of, and received $150 a month from, the Oregon Transfer Company during the same time, and Mr. Holladay was the controlling owner of that as well as of the railway company, the salary paid him by the former company was to cover his services as secretary of the latter. But there was no agreement to that effect, and we are unable to understand why the transfer company should be required to pay for services rendered to the railway company, unless it agreed to do so, or why Mr. Gray should be required to work for the railway company without compensation because he was receiving a salary for services rendered to another company. A point is made of the fact that he made no demand on the railway company for his salary on account of his services as secretary, but this circumstance is fully explained by the testimony, from which it appears that Mr. Holladay "had a peculiarity," and "always thought when pay day came it was ground to discharge a man" who insisted on payment, and therefore Gray preferred to allow his account as secretary of the railway company to stand, rather than jeopardize his position with the other company. We are of the opinion that there is no error in the decree of the court below, and it is therefore affirmed.                                    AFFIRMED.