STATE EX REL. LEWIS AND CLARK COUNTY, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 6,831.)

(Submitted February 24, 1931. Decided April 6, 1931.)

[300 Pac. 544.]

214

*Mr. Sherman W. Smith,* County Attorney, *Messrs. Smith, Mahan & Smith, Messrs. Stewart & Brown,* and *Mr. J. R. Wine,* for Relator, submitted a brief; *Mr. Henry C. Smith, Mr. John G. Brown* and *Mr. Wine* argued the cause orally.

*Mr. E. G. Toomey,* of Counsel for Relator, submitted a brief and argued the cause orally.

*Mr. George H. Stanton,* of Counsel for Relator and in behalf of the Stanton Trust & Savings Bank, a creditor, submitted a brief and made oral argument.

*Mr. Chas. E. Pew,* for Respondents, submitted an original and a supplemental brief and argued the cause orally.

*Mr. Edward J. Horsky, Mr. George W. Pierson, Mr. W. J. Paul, Messrs. Walsh & Nagle, Mr. J. Miller Smith, Mr. Paul W. Smith, Mr. David R. Smith, Messrs. Loble & Adair* and *Mr. H. A. Bolinger,* of Counsel for Respondents, submitted an original and a reply brief; *Mr. Horsky* and *Mr. Pierson* argued the cause orally.

HONORABLE F. E. STRANAHAN, District Judge sitting in place of MR. JUSTICE FORD, disqualified, delivered the opinion of the court.

This is an application for a writ of supervisory control. The petition for the writ discloses the following facts:

On May 2, 1923, the Banking Corporation of Montana, by reason of its insolvency, closed its doors. The failure was a bad one, so that its entire remaining assets, with the added

stockholders' liability on a capitalization of $500,000, would produce a fund so comparatively small that it would pay but a slight percentage of the demands of the depositors and other creditors. Immediately after the closing of the bank, the attorney general instituted the usual proceedings in the district court for the liquidation of the affairs of the bank through the instrumentality of a receiver.

Some time before the bank closed but while it was in a condition of insolvency, which condition was or should have been well known to the stockholders, an attempt was made by the statutory method to reduce the capital stock by half, and the receiver, assuming that the procedure employed for the reduction had been effectual, collected from the stockholders upon the reduced basis of a $250,000 capitalization.

Thereafter a number of depositors whom, for the sake of brevity we shall call "the Mitchells," brought for themselves and for all others similarly situated, in the court where the liquidation was in progress, a creditors' suit for the purpose of securing the annulment of the proceedings for capital stock reduction, and to subject the entire capitalization to the stockholders' liability. Paragraph 43 of their amended complaint is as follows: "That there are a large number of unsecured creditors of said Banking Corporation, to-wit, more than two thousand five hundred (2,500), having unpaid claims against the Banking Corporation; that among said creditors there are numerous creditors who now have claims which were in existence on February 28th, 1922, the date upon which said pretended reduction of said capital stock took place, and that the questions involved in this action are of a common and general interest to them; that this suit is brought upon behalf of plaintiffs and all other persons similarly situated, and for the purpose of having determined in one action the rights of all interested persons."

Notwithstanding this allegation and others of similar character in the complaint, all framed in equity as a creditors' bill, the Mitchells and the defendants now contend that, because the bank's creditors have each a separate and distinct demand

at law against the stockholders who have each a separate and distinct liability at law to pay toward the extinguishment of the creditors' demands, the Mitchell action is purely one at law, and that those allegations in equity, for the benefit of all other creditors, must now be treated as surplusage, to the exclusion of those creditors because they have not seasonably intervened at law, and thus, as to them, "to keep the word of promise to the ear and break it to the hope."

After dragging its tortuous way through the courts for years, the Mitchells prevailed in this court, and for further details reference may be made to the reports of the case of *Mitchell* v. *Banking Corporation of Montana*, to be found in 81 Mont. 459, 264 Pac. 127, and 83 Mont. 581, 273 Pac. 1055.

Upon the creditors' suit being remanded to the trial court for further proceedings, notice was sent by that court to all those creditors of the bank who might be similarly situated as the Mitchells, to come in and show wherein they were so similarly situated and to present their claims, to the end that they might be brought into the suit. Up to that time, something over six years after the closing of the bank, no creditor other than those originally instituting the creditors' suit had been brought in, nor had any of them made formal application to have their names entered as parties. In response to the notice sent out by the trial court, a large number of the approximately 2,500 creditors of the defunct bank appeared in court and sought to enforce their supposed right to participate in the fruits of the litigation commenced and carried on by the Mitchells. These efforts were resisted by the stockholder defendants in which the Mitchells joined, upon the theory that, while the applicants may at one time have been similarly situated to the Mitchells, they were no longer so situated, because they had failed to become actual parties to the creditors' suit within the three-year limitation provided for by section 9061 of the Revised Codes of 1921, during which time action must have been brought upon the stockholders' liability, provided for in section 6036, Id., as amended by Chapter 9, Laws of 1923, and as defined in the opinion of this court in the case of *Mitchell*

v. *Banking Corporation of Montana,* 83 Mont. 581, 273 Pac. 1055.

The trial court adopted the theory that all these applicants, without exception, were barred by the statute and their right to be brought in was denied; whereupon one of their number, to-wit Lewis and Clark county, made the application for this writ in order to correct the alleged error.

During the trial, the receiver, relying upon section 6036, Revised Codes of 1921, as amended (Chap. 23, Laws of 1927, p. 48), permitting such action, applied to the court to be substituted as plaintiff in the Mitchell suit, which application was denied.

To the petition for the writ, the respondents filed their demurrer on general and special grounds, and, without waiving, but saving, the right to urge their grounds of demurrer, filed their answer.

So far as the demurrer is concerned, there may be some ■ minor inaccuracies in the petition, but we find therein sufficient allegations to disclose that the case is exigent and that the remedy by the possible hundreds of separate appeals is not only inadequate but appalling to contemplate, and the demurrer is overruled.

There is but one form of civil action for the enforcing of ■ private rights or redressing private wrongs in this state (section 9008, Rev. Codes 1921), but this provision refers only to the form and not to the substance, and does not abolish the distinction between causes of action which may proceed at law or in equity upon the issues presented. (*Montana Ore Pur. Co.* v. *Boston & Mont. etc. Co.,* 27 Mont. 288, 305, 70 Pac. 1114; *Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302; *Butala* v. *Union Elec. Co.,* 70 Mont. 580, 226 Pac. 899.) The creditors' suit by the Mitchells is an action in equity. (*Springhorn* v. *Dirks,* 72 Mont. 121, 231 Pac. 912.)

Much trouble seems to have arisen because counsel have failed to appreciate the fact that while there are a great many exacting Code provisions which must be strictly followed as applied to actions at law, yet there are others growing out of the chancery practice with which the law provisions have

220

nothing to do, except as equity follows the law, and the two must not be confused. The attempted amalgamation of the two sets has resulted in a great diversity of opinion; whereas, if the equity provisions had been followed, they would have been found to serve perfectly and to clarify what first appeared to be difficult and doubtful.

The first of these equity provisions, and as though enacted especially for the purposes of this case, is as follows: "When the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Sec. 9083, Rev. Codes 1921.)

It will be observed that this provision does not require that those for whom the suit is brought shall be "similarly situated" to the plaintiffs named in the complaint, but that it is sufficient if they be commonly or generally interested in the subject matter involved in the suit, and thus the finely drawn distinctions which might grow out of the phrase "similarly situated" are avoided.

It will also be seen that this provision in no way indicates that anything is to be done by any of those sued for, but it does indicate that all of them are not primarily to be brought before the court, because to do so would be impracticable, and because there is no occasion for their presence during the progress of the suit which is being carried on for their benefit. They are all suing through the instrumentality of another. "*Qui facit per alium facit per se.*" If these creditors are all suing, it cannot justly be said that they are guilty of laches, or that they fall within the three-year limitation for the commencement of the action.

At the conclusion of the litigation and in preparing for the decree, it will become necessary for the chancellor to see to it that all creditors, commonly or generally interested, shall receive their ratable shares of the trust fund to be gathered from the stockholders and turned into the court, and then for the first

time it will become necessary for the presence in court of all other parties interested.

Another provision of the Codes, framed on the practice of equity, is at hand to meet this situation: "When a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in." (Sec. 9090, Rev. Codes 1921.)

Even here the creditors sued for are not required to take the first step. When their presence is required, and not before, the court "must then" order them brought in, and it is only when they fail to take advantage of the order that the time constituting laches or limitation of action begins to run, and that period of time will be designated by the trial court.

The author on the subject of "Creditor Suits" in Corpus Juris says: "According to some decisions, although a bill is filed by one creditor for himself and all others who may come in and share the burden of the litigation, the statute runs against the demands of the creditors, other than plaintiff, until such time as they come in; but the weight of authority is to the contrary." (15 C. J. 1409.)

The running of the statute of limitations, whatever its character may be, is suspended in representative cases of this kind prior to the bringing in of the absent creditors sued for. (*Irons* v. *Manufacturers' Nat. Bank*, (C. C.) 27 Fed. 591; *Richmond* v. *Irons*, 121 U. S. 27, 30 L. Ed. 864, 7 Sup. Ct. 788; *Taber* v. *Royal Ins. Co.*, 124 Ala. 681, 26 South. 252; *Dobson* v. *Simonton*, 93 N. C. 268; *Dunne* v. *Portland St. R. Co.*, 40 Or. 295, 65 Pac. 1052; *Laidley* v. *Kline*, 23 W. Va. 565; *Barrick* v. *Gifford*, 47 Ohio St. 180, 21 Am. St. Rep. 798, 24 N. E. 259; Angell on Limitations, 5th ed., sec. 351; *Pennell* v. *Lamar Ins. Co.*, 73 Ill. 303; *Fox* v. *Produce C. S. E.*, 192 Ill. App. 301; note to *Patterson* v. *Peaslee-Gaulbert Co.*, L. R. A. 1917D, 888; *Brinckerhoff* v. *Bostwick*, 99 N. Y. 185, 1 N. E. 663; 7 Fletcher, Cyclopedia Corporations, sec. 4240.)

There appears to be no method of procedure laid down in the Codes which is required to be followed in order to bring the creditors sued for into court. Certainly the cumber-

some procedure of 2,500 sets of pleadings on intervention could not be tolerated. Here again we have recourse to another provision of the Code, based upon the equity practice: "When jurisdiction is, by the Constitution or this Code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." (Sec. 8882, Rev. Codes 1921; *State ex rel. Bullard* v. *District Court,* 86 Mont. 358, 284 Pac. 125.)

As illustrating these beneficent principles, we quote from Professor Pomeroy, whose brilliancy as an author on equity and remedial rights has not dimmed in the more than two generations since he wrote: "The grand principle which underlies the doctrine of equity in relation to parties is, that every judicial controversy should, if possible, be ended in one litigation; that the decree pronounced in the single suit should determine all rights, interests, and claims, should ascertain and define all conflicting relations, and should forever settle all questions pertaining to the subject-matter. Since the chancery judges were not hampered by the legal dogma that one judgment must be rendered alike for all the plaintiffs and against all the defendants on the record, they were enabled to adopt and enforce such practical rules as would render this principle operative and efficient." (Pomeroy's Code Remedies, 5th ed., sec. 161, at page 265.)

The order of the trial court denying the application of the receiver to be substituted in the place of the Mitchells as plaintiff in the creditors' suit is not only not vital, but is of little consequence in this case, and it will not be disturbed here. It is true that the legislature, after the Mitchell suit was commenced, deemed it proper to grant to a receiver the right to make such an application. (Sec. 6036, Rev. Codes 1921, as amended by Chapter 23, Laws of 1927, p. 48.) Nothing, however, in the amendatory Act made it imperative upon the court

to grant the receiver's application, and the court acted upon discretion.

If the creditors are "brought in" and taken care of by the decree, it can make no material difference whether they are named as plaintiffs or defendants, or neither. "Equity regards substance rather than form." "Technicalities in equity may be resorted to only when in no other way can the just rights of the parties be protected and preserved." (21 C. J. 205.)

The litigation here involved is unusual, and the like is not apt soon to occur again. The conditions are so extraordinary that counsel on both sides of the case have asked the court to indicate in this opinion a method of future procedure with a view to a speedy and orderly determination of the entire controversy.

Except as otherwise provided in the Constitution, this court has appellate jurisdiction only. (Const. Mont., Art. VIII, sec. 2.) That jurisdiction extends to grievances *in esse* and not to fancied grievances *in posse*. Therefore what the court may herein say in an effort to avoid possible future entanglements is purely suggestive, and is neither mandatory nor prohibitory, and is not to be considered as an established precedent.

The trial court may see fit to appoint some proper person to exercise functions prescribed by the court to carry its decree into effect; it may order such person to take accounts in order to determine facts and make report thereon, should any controversies arise with respect to the amount or amounts to which a creditor may be entitled if the court shall enter judgment for plaintiff.

By the provisions of section 6036, Revised Codes 1921, as amended by Chapter 9 of the Laws of 1923, page 24, which were operative when the Mitchell suit was commenced, the legislature indicated that the receiver was a proper person to maintain appropriate suits on behalf of the creditors and against the stockholders for the recovery and collection of the stockholders' liability, and the proper procedure for the distribu-

tion of the funds collected, under the order of the court, without diminution to the creditors of the bank. And, while the receiver in this instance failed to maintain the suit referred to, yet he is a proper person to fulfill the orders and judgment of the court in this action and, if designated, should serve without other compensation than that which he is paid as receiver.

Because the receiver did not maintain the action, which has been accomplished by the Mitchells at considerable expense, that necessary expense, including a reasonable attorney's fee to be fixed by the court, should first be paid to the Mitchells, if and when judgment is entered in their favor and moneys are collected from the stockholders. To hold otherwise would be wholly unconscionable. It would be tantamount to saying to the great mass of creditors, "You may stand idly by for years, giving no assistance to one who carries on the battle in your behalf, and careless whether he wins or loses; yet you may, having risked nothing, share ratably with him in the fruits of the victory he has won." They would share in the feast at the expense of the hunter who got the game.

In order that each may bear his just burden, we suggest that the court order that the creditors desiring to join in this action be permitted to do so upon condition that they contribute, or offer to contribute, their proportion of the costs and expenses incurred by the plaintiffs up to the time the court permitted the creditors to join in the action or to present their claims, viz., December 6, 1930; each creditor to bear the proportion of expense which his claim bears to the amount recovered. The Mitchells should, of course, bear their proportionate share to be ascertained likewise. The liabilty of all creditors for the expense of the suit and the Mitchells' attorney's fee should be borne ratably and proportionately. Probably, the circumstances in this case considered (assuming judgment shall go for plaintiffs and moneys shall be collected thereunder), as good a way as any will be for the court to fix the attorney's fee of counsel for the Mitchells and order that, with other lawful expenses of the lawsuit, to be paid out of the trust fund before distributing the remainder to the creditors.

The record indicates that a large number of the creditors, in compliance with the court's order of December 6, 1930, appeared in court on January 15, 1931, and presented their claims with such formalities as were required by the court. It would seem to be unnecessary for the creditors to make any further showing, except as to their willingness to share the expenses herein indicated. However, the court may deem it necessary to give further notice in order that creditors who did not appear pursuant to the notice of December 6, 1930, may do so.

If, in the opinion of the trial court, all creditors have had ample opportunity to appear and file their claims, there seems to be no reason why further opportunity should be extended to them, but, on the other hand, if such opportunity has not been allowed, then further opportunity should be granted.

This disposes of all matters that we deem of importance in this proceeding.

The writ is granted and the order of the trial court denying the right of the relator and others to be brought into the case of *Mitchell et al.* v. *Banking Corporation of Montana et al.*, is annulled, and the trial court is directed to proceed with the case upon principles of equity.

Mr. Chief Justice Callaway and Associate Justices Galen, Matthews and Angstman concur.

---

On Motion for Rehearing.

(Filed June 22, 1931.)

Opinion: PER CURIAM.

Complaint is made that the opinion promulgated April 6, 1931, erroneously treats the action as a "creditor's suit" and refers to the time limit for commencement of an action to enforce a stockholder's liability as a statute of limitations.

Conceding that the action is not technically a creditor's suit as that term is used in the equity practice, that fact does not affect the soundness of the opinion; "a rose by any other name would smell as sweet."

The Mitchells exercised a right granted by statute and which did not exist at common law (*Mitchell* v. *Banking Corp.*, 83 Mont. 581, 273 Pac. 1055, 1058). The statute was modeled after the equity practice, and, under it, a creditor could only maintain an action to enforce the stockholder's liability "for the use and benefit of all." (*Barth* v. *Pock*, 51 Mont. 418, 155 Pac. 282.) This the Mitchells did, and thus became representatives of all creditors who might thereafter come in to share in the fruits of the litigation, if any. Technically speaking, the action is a representative one rather than a creditor's suit, but the result is the same.

In the opinion it is said: "The running of the statute of limitations, whatever its character may be, is suspended in representative cases of this kind prior to the bringing in of the absent creditors sued for."

The time limit declared by section 9061, Revised Codes of 1921, does not constitute a statute of limitations, as it "does not affect the remedy merely, but is of the essence of the right itself, and one who seeks to enforce such a right must show affirmatively that his action is timely." (*Mitchell* v. *Banking Corp.*, above.)

However, when Mitchell and his coplaintiffs brought this action for themselves and all others similarly situated, they represented all who might thereafter assert their rights, and, under the maxim "he who acts through another acts through himself," each of the creditors became a potential plaintiff when the complaint was filed, and, on asserting their rights, their right to make proof will relate back to the date of such filing, so that all creditors entitled to share in the trust fund are in the same position before the court as though all had joined in the original complaint. All of the reasons for the rule applied to creditors' suits with reference to the ruling

of the statute of limitations are applicable here, and the authorities cited in the opinion sustain the decision that the filing of the Mitchell complaint was not only timely as to the named plaintiffs, but as to those not named but made plaintiffs in the action and who are found to be in the same situation as those named.

In the further proceedings suggested in the opinion it will, of course, be necessary that those who would share in the fund must in an appropriate manner, in which the stockholders have the right to be heard, show to the court that they have valid existing claims.

It is contended that the Mitchell action is in law, and, therefore, the rules at law, including the right of trial by jury, and not in equity, should apply. Whether an action on a stockholder's liability is at law or in equity depends largely upon the wording of the statute fixing the liability. (7 Fletcher's Cyc. of Corporations, sec. 4218.) In declaring this action to be one in equity, we follow the decisions of New York, which state has a provision in the identical words of our section 6036, and from which we probably adopted it (*Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166, 46 L. R. A. 839, 51 N. E. 997), and, as pointed out in the opinion herein, it is only in equity that the intention of the statute can be carried out and justice done.

Rehearing denied.