A. N. AND N. A. WHITE v. R. O. GREEN, Appellant.

**Corporations:** STOCKHOLDERS LIABILITY. The sale, though made in good faith, by a stockholder in a corporation of his stock, only a small part of the par value of which has been paid, does not terminate his liability for the existing debts of the company, under Code, 1873, section 1078, providing that the transfer of shares is not valid except as between the parties unless it is regularly entered on the books of the company, but that such transfer shall not in any way exempt the person making it from any liability of the corporation created prior thereto, and section 1082, providing that nothing contained in such chapter shall exempt the stockholders from individual liability to the amount of the unpaid installments on the stock owned by them or transferred by them for the purpose of defrauding creditors.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, APRIL 8, 1898.

ACTION at law on a judgment rendered against the Zoological Park Company of Des Moines, Iowa, to recover of the defendant, on account of capital stock of the company at one time owned by him, on which he is alleged to be liable as for unpaid stock. There was a trial by the court without a jury and a judgment in favor of the plaintiffs. The defendant appeals.—*Affirmed.*

*Bishop, Bowen & Fleming* for appellant.

*Dowell & Parrish* and *Earl & Prouty* for appellees.

Robinson, J.—The Zoological Park Company was organized as a corporation for pecuniary profit, in the year 1889, with an authorized capital stock of two hundred thousand dollars. Before the organization was completed, a syndicate was formed for the purpose of organizing the company, and purchasing a tract of land then owned by L. M. Mann. An agreement was made, by virtue of which the land was conveyed to the company when its organization was perfected. The consideration for the conveyance was twenty thousand dollars in money and real estate, and forty thousand dollars in bonds secured by a mortgage upon the land conveyed by Mann. The company was organized by the members of the syndicate, who issued to themselves capital stock to the amount of one hundred and twenty thousand dollars, for which they paid nothing except the twenty thousand dollars in money and real estate which were transferred to Mann as stated. The certificates of stock recited that the shares therein specified were held "subject to the articles of incorporation of the company and to the terms and conditions printed on the back" of the certificates. On the back of the certificates was printed the following: "This stock is fully paid up, but may be assessed at such times and in such amounts as may be necessary to meet the several payments of principal and interest upon the mortgage incumbrance upon the lands and personal property owned by the company, as such payments become due; said mortgage incumbrance being for the sum of forty thousand dollars. * * * It may also be assessed for the purpose of improving said property, and for other necessary

expenses of the company; all such assessments for purposes other than the payment of the mortgage incumbrance and interest above referred to not to exceed in the aggregate ten per cent. of the capital stock outstanding. * * *" In September, 1890, the articles of incorporation were so amended as to permit the board of directors to assess the capital stock for the purposes enumerated, at such times and in such sums as might be necessary, to an aggregate amount which should not exceed "the unpaid installments of capital stock outstanding." Assessments for the purpose of making improvements, for incidental expenses, and to make payments on the mortgage debt were made from time to time, and paid. The defendant was not one of the original stockholders of the company, but in March, 1891, he purchased from one H. L. Chaffee 10 shares of the capital stock of the company, each of which was of the par value of one hundred dollars. In August, 1891, the company issued a new series of bonds, a part of which became the property of the plaintiffs. In March, 1892, the defendant sold his stock to one Frick, to whom it was duly transferred on the books of the company. In April, 1894, the plaintiffs obtained in the district court of Polk county a judgment on their bonds, and an execution was issued on the judgment, but no property was found, although demand was made of the last acting president of the company, and the execution was returned unsatisfied. The plaintiffs allege that but two hundred dollars have been paid on the stock which was owned by the defendant, and they seek to recover of him the unpaid portion. The district court rendered judgment against him for the sum of seven hundred dollars and fifty-two cents and costs. This is the second submission of this cause, a re-hearing having been granted after the filing of the opinion on the first submission.

I.   It is first contended by the appellant that he purchased the stock in question in good faith, believing that it had been fully paid for, and that he should not be held liable in this action for that reason.   It is only necessary to say, in response to that claim, that there is evidence which tends to show that the appellant, at the time he purchased the stock, had such knowledge of the facts in regard to the organization of the company and the consideration for the stock that he must be held to have taken it with notice of the fact that but a small part of the amount which it represented had been paid, and that he might be held liable on account of the debts of the company.   The evidence to support that theory is sufficient to sustain the finding of the district court.   There is also ample evidence to show that the company has received for the stock but a small part of its par value.   See *Wishard v. Hansen*, 99 Iowa, 307.

II.   The question of chief importance which we are required to determine is whether the sale of the stock made by the defendant terminated his liability for the debts of the company.   The general rule, in the absence of statutory regulation, is that, where a stockholder makes an absolute transfer of his stock in good faith, and a record of the transfer is duly made in the books of the company, the transferrer is thereby released from all liability on account of the unpaid part of the stock for which a call has not been made, and the transferee becomes liable for the part of the stock remaining unpaid. 1 Cook Stock  Stockholders & Corporation Law, sections 255, 256; 1 Morawetz  Private Corporations, section 159; Thompson  Corporations, sections 3221, 3222; Beach Private Corporations, sections 125, 126.   But it has been claimed that this rule has been changed in this state by statute, and to ascertain if that claim be well founded it is necessary to examine sections 1078 and 1082 of the

Code of 1873, contained in the chapter which relates to corporations for pecuniary profit. Section 1078 provides that "the transfer of shares is not valid, except as between the parties thereto, until it is regularly entered on the books of the company; * * * but such transfer shall not in any way exempt the person making it from any liability of such corporation created prior thereto." Section 1082 is as follows: "Neither anything in this chapter contained, nor any provision in the articles of incorporation shall exempt the stockholders from individual liability to the amount of the unpaid installments on the stock owned by them, or transferred by them for the purpose of defrauding creditors, and execution against the company may, to that extent, be levied upon private property of any such individual." The provisions we have set out are, in substance, found in sections 692 and 695 of the Code of 1851, and, to be fully understood, they must be considered in connection with the law as it existed prior to their enactment, and the evils which the new law was designed to remedy. Among those evils was the right of a solvent stockholder to transfer his stock to an insolvent person, and thus release himself from liability for existing liabilities of the corporation to the prejudice of good-faith holders of such liabilities. Hence it was enacted that "such transfer shall not in any way exempt the person making it from any liabilty of said corporation created prior thereto." This eliminated from the effects of such transfers the exemption from corporate liabilities which would otherwise have resulted, and continued the obligation of the transferrer for liabilities of that character which had been created prior to the transfer. The liability of a stockholder is not to the corporation alone, but also to its creditors, and may, in proper cases, be enforced by them; and the effect of the statute was to continue the liability of the transferrer to the creditors

of the corporation as well as to the corporation. The liabilities contemplated by the statute are not merely obligations which are due and payable when the transfer is made. Liability in a legal sense, is the state or condition of one who is under obligation to do at once or at some future time something which may be enforced by action. It may exist without the right of immediate enforcement. 1 Bouvier Law Dictionary; Repalje & Laurence Law Dictionary; Standard Dictionary, 1024; *Railroad Co. v. Clarke*, 29 Pa. St. 146. It is contended, however, that the liability contemplated by section 1078 is that referred to in section 1082, but we do not concur in that view. The words "any liability," of section 1078, refer expressly to corporate liability, and the section continues the obligation of the stockholder, after he has transferred his stock, to pay the unpaid installments of the stock on account of any liability of the corporation which existed at the time of the transfer, even though it was made in good faith. But section 1082 refers more especially to stockholders who have not transferred their stock, and to those who have transferred it for the purpose of defrauding creditors. The section continues the liability of stockholders for unpaid installments on the stock owned by them, notwithstanding the fact that it may have been obtained from others who are also liable for such installments under section 1078; and it also continues the liability of persons who, having owned stock, have transferred it for the fraudulent purpose stated. Such a case might arise where a stockholder has made a transfer of his stock, fraudulent as to creditors, and merely colorable. In that case he might continue to be liable to the corporation for unpaid installments of stock, and might also be liable for corporate liabilities incurred after the fraudulent transfer was made. See *Brundage v. Cheneworth*, 101 Iowa, 256.

The provision might also apply in other cases. The interpretation we have adopted gives force and effect to all of the provisions of sections 1078 and 1082, and is not only authorized, but is required by the rules which govern the interpretation of statutes. The appellant relies upon the case of *Spilman v. Mendenhall*, 57 N. W. Rep. (Minn.) 468, as sustaining the interpretation for which he contends. The statutory provisions considered in that case were as follows: "Sec. 8. But such transfer [of corporate stock] shall not in any way exempt the person making such transfer from any liabilities of said corporation which were created prior to such transfer." "Sec. 9. The private property of each stockholder in any corporation formed as herein provided is liable for corporate debts in the following cases: *First*—For all unpaid installments on stock owned by him, or transferred for the purpose of defrauding creditors." Gen. St. Minn. 1878, chapter 34. The supreme court of Minnesota held that section 9 so far limited the effect of section 8 that the liability of a stockholder for unpaid installment did not continue after the transfer, in good faith, of his stock. Section 8 is, in legal effect, precisely the same as the part of section 1078 which we have considered, but section 9 is unlike section 1082 in that section 9 specifies the cases in which the private property of a stockholder is liable, and those specified do not include the case of a stockholder who has transferred his stock in good faith. Section 1082 does not purport to enumerate the cases in which a stockholder is liable. The interpretation adopted in the *Spilman Case* treats the person who has transferred his stock as still a stockholder within the meaning of section 9. Whether that is a correct interpretation, we need not determine, but content ourselves with saying that the language of section 9 of the Minnesota statute is not the same as is that of section 1082. If it be true,

however, that the meaning and legal effect are the same, we cannot approve the interpretation adopted in the *Spilman Case.* We cited that case in *Calumet Paper Co. v. Stotts Inv. Co.,* 96 Iowa, 147, but only to sustain the conclusion that a stockholder was liable for a debt of the corporation even though it was contracted before he became a stockholder. Nothing decided in the case last cited is in conflict with what we hold in this case.

III. What we have said disposes of the material questions presented for our determination. We do not find any reason for disturbing the judgment of the district court, and it is AFFIRMED.