EMMET J. CROWELL and Another v. NORTHWESTERN NATIONAL LIFE
INSURANCE COMPANY.[1]

September 7, 1906.

Nos. 14,714—(105).

**Insurance—Agency Contract—Sale of Company.**

A life insurance company sold and transferred to another company all
its business and assets and went out of business. The latter company
assumed and agreed to pay all valid outstanding contractual liabilities of
the former company. Certain agents of the original company had an out-
standing valid contract of employment with the company, under which
they were to receive a certain percentage of the amount of premium
notes given by persons from whom they had solicited insurance, when the
notes were paid. A large number of these notes were not due when the
company went out of business. In an action for damages by the agents
against the assuming company, on demurrer to the complaint, it is *held*
that:

(a) The effect of the sale and transfer of the business of the insurance
company was to render the outstanding policies of insurance and the notes
given therefor, voidable at the election of the insured.

(b) The premium notes given for such policies were no longer absolute,
but became conditional obligations of the makers.

(c) The presumption is that the makers of the premium notes were sol-
vent.

(d) The complaint states a cause of action by allegations which show
that the original company broke the contract of employment by placing
it out of its power to continue its business, and keep its contracts with its
policy holders, thus making the premium notes uncollectible.

(e) The liability of the original company for damages occasioned by the
breach of the contract with its agents was assumed by the agreement of
the purchasing company to pay all valid outstanding contractual liabilities
of the selling company.

(f) As affecting the amount of recovery the burden is upon the defend-
ant to plead and prove the facts with reference to the election of the
policy holders to continue the policies with the defendant company.

Appeal by defendant, Northwestern National Life Insurance Com-
pany, from an order of the district court for Hennepin county, John

[1] Reported in 108 N. W. 962.

Day Smith, J., overruling a general demurrer to each of two causes of action stated in the complaint.   Affirmed.

*Koon, Whelan & Bennett,* for appellant.

*M. H. Boutelle, N. H. Chase,* and *Jay W. Crane,* for respondents.

ELLIOTT, J.

Appeal from an order overruling a general demurrer to each of two causes of action stated in the complaint.   The pleading, with the exhibits which are made a part thereof, is quite long; but a brief summary will enable us to understand the issues presented by the demurrer:

For a first cause of action it is alleged:   That on or about February 14, 1901, the respondents, as copartners, entered into a written agreement with the Northwestern Life & Savings Company, an Iowa corporation, hereinafter called the "Iowa Company," under which they became its general agents in certain territory in the state of Minnesota, for the purpose of carrying on the business of said company in respect to the solicitation and procuring of contracts of life insurance.   This contract secured to the respondents, as commission, a percentage of the first annual premium or part thereof when paid to the company in cash on each and every policy procured through their agency.   On August 23, 1901, a new contract was made between the parties, which embodied the terms of the original contract, and in addition contained a stipulation by which the company agreed to pay the respondents a commission during the continuance of the agency, based upon a percentage of each and every renewal premium paid the company on certain designated policies, and a further stipulation extending the exclusive territory of respondents so as to cover and embrace the entire states of Minnesota and North Dakota.   On the execution of the original contract, the respondents forthwith entered upon the performance of their duties thereunder, and continued under the original and subsequent contracts to act as the general agents of the Iowa Company until the unlawful termination of said employment by the Iowa Company on August 23, 1903.   On the last-mentioned date, while the contracts were in full force and effect, and respondents were engaged in the performance of their duties thereunder, the Iowa Company wholly ceased and abandoned

the transaction of its corporate business, and sold and transferred all of its corporate properties, assets, and business to appellant herein, the Northwestern National Life Insurance Company, a Minnesota corporation. That by the terms of the agreement between the said Iowa and Minnesota corporations the Iowa Company agreed to cease the further conduct of its corporate business, and the further writing or issuance of policies of insurance of any class or character whatever. That in and by the terms of the agreement between the two insurance companies the Minnesota Company, the appellant herein, agreed to assume, and did assume, the payment of all valid, legal outstanding contractual liabilities of the Iowa Company. That the said contract between the two companies was carried out and consummated, and the assignment and transfer alleged duly accepted by the defendant, and from and since the date of said transfer, the said Iowa Company has conducted no business whatsoever. That at the time of the transfer and assignment last hereinbefore alleged, the agreements hereinbefore stated between the plaintiffs and the said Northwestern Life & Savings Company were in full force and effect. That these plaintiffs had fully complied with, and performed, all and several the terms and conditions of said agreements and each of them. That by, and as a result of, the transfer and assignment hereinbefore alleged, and the cessation of business by the said Northwestern Life & Savings Company the plaintiffs were prevented from proceeding with the carrying on of the business of the said agency, or with the performance of the terms of the contracts in that behalf provided, and the business of said agency was by, and as a result thereof, and without any fault on the part of these plaintiffs, wholly destroyed. That during the term of their employment, the respondents, in reliance on the terms of their agreement, had expended upwards of $10,000 in building up and extending their agency, and in placing solicitors in the field for the purpose of enlarging the business of the agency, and, as a result thereof, had at the time of the unlawful termination of their employment, built up and established in the states of Minnesota and North Dakota a large and profitable business, and had secured for the Iowa Company a large amount of insurance. At the time of the termination of their employment as aforesaid a large number of policy contracts were outstanding, procured by respondents' solicitation,

for which the company had received and accepted from the various policy holders premium notes to the amount of $91,828.14, all of which were transferred to appellant as part of the assets of the Iowa Company, and none of which had matured at the date of that transfer. That all of these notes were given and received, for first-year premiums on said policies, and respondents were entitled to receive as their commissions thereon under the terms of said contracts, the sum of $64,279.70. That all of said notes were invalidated and the policy contracts in consideration of which they were executed, rescinded by, and as a result of, such transfer. That as a result of the cessation and abandonment of its business by the Iowa Company the respondents were prevented from proceeding with the business of their agency; that the business of the agency was in consequence wholly destroyed, and respondents were wholly deprived of their commissions on original and renewal premiums during the life of the policies procured for the company through their agency to their damage in the sum of $80,000.

For a second cause of action it is alleged: That on March 1, 1902, a third contract was entered into between the plaintiffs and the Iowa Company by the terms of which respondents' agency was employed to solicit applications for a so-called "weekly investment contract" within the state of Minnesota, and that under said contract the plaintiffs were to receive as compensation a commission of seventy per cent. on each and every first annual premium or part thereof when paid the company in cash. That on or about March 1, 1903, the company, through the instrumentality of plaintiffs, made a contract with the firm of Armstrong & Mohr under which the latter assumed the agency of the Iowa Company in connection with the development of its "weekly instalment contract" business, and in consideration, among other things, of the services of the respondents in procuring this contract, the Iowa Company agreed to pay plaintiffs as commissions on any and all business secured on the solicitation of said Armstrong & Mohr a commission of ten per cent. on each and every weekly instalment paid on each and all of said contracts beginning with the nineteenth week, and continuing for thirty three weeks on all first-year premiums and said premiums should be actually paid to the Iowa Company in cash. That immediately upon entering into the contract

of March 1, 1902, the plaintiffs entered actively upon the work of soliciting for the weekly investment contracts, and secured a large number thereof, in response to which the Iowa Company executed and delivered its "investment contracts." That, as a result thereof, and of the contracts subsequently issued by the Iowa Company through the applications procured by the firm of Armstrong & Mohr, plaintiffs were entitled to receive as commissions in accordance with the terms of the several agreements, the sum of $5,000, no part of which has ever been paid. The allegations contained in the first cause of action are incorporated and made a part of the second cause of action.

The appellant contends that the complaint fails to state a cause of action, because under the contract between the respondents and the Iowa Company the liability of the company was contingent, and the complaint does not allege that the contingency would have happened but for the alleged wrongful act of the company. In other words, it is claimed that the complaint does not comply with the rule which requires the pleader to show that the contingency has happened, or that it was prevented from happening solely by the act of the other party. The various questions argued are involved in the determination of two questions:

1. Does the complaint state a cause of action against the Iowa Company? And if so:

2. Is the Minnesota Company responsible therefor under the terms of its assumption of the contract?

Both these questions require an affirmative answer.

We do not feel called upon to consider all the questions which are raised and argued upon the demurrer. The proper measure of damage cannot now be determined. The question does not arise upon the demurrer. It has never been before the trial court. Two causes of action are alleged, and both aver facts which entitle the plaintiffs to recover damages to some extent. The Iowa Company voluntarily placed it out of its power to continue the business, and fulfil its obligations to its policy holders. Before the transfer of its business and assets, the obligations represented by the premiums notes were absolute, and presumably the notes were collectible. After the transfer the makers of the notes could not be compelled to pay. Neither the Iowa Company nor the appellant could enforce payment if the makers

were not willing to pay. It was optional with them to pay or refuse to pay. Lovell v. St. Louis Mut. L. Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423. It was the duty of the insurance company to collect these notes, but it put it out of its power to perform the obligation which it owed to the respondents. When one party to an executory contract prevents the performance of it, or puts it out of its power to perform, the other party may treat it as terminated, and demand whatever damages he has sustained thereby. U. S. v. Behan, 110 U. S. 338, 339, 4 Sup. Ct..81, 28 L. Ed. 168. The contract with the respondents was broken, and they are entitled to recover the damages caused thereby. Lewis v. Atlas, 61 Mo. 534. The presumption is that the makers of the notes were solvent, and that the notes were collectible. If the makers have not availed themselves of their legal right to refuse payment the facts must be pleaded and proved by the defendant. The facts are peculiarly within its knowledge.

The defendant company assumed and agreed to pay "all valid outstanding contractual liabilities" of the Iowa Company. The appellant's contention is that the assumption was limited to such liabilities as were then overdue and unpaid. We think this is placing too narrow and restricted a construction upon the language. Liability, in a legal sense, is the state or condition of one who is under obligation to do at once or at some future time something which may be enforced by action. White v. Green, 105 Iowa, 176, 181, 74 N. W. 928; Pittsburgh v. Clarke, 29 Pa. St. 146. In its broadest sense, the word indicates responsibility for torts as well as for breach of contract. Miller v. Kern, 134 Cal. 586, 66 Pac. 856. At the time when the appellant purchased the business of the Iowa Company, the latter was in contract relations with the respondents. The contract imposed certain mutual obligations, and it must have been the intention of the appellant to assume such obligations. This included the liabilities which resulted from the breach of the contract, by the execution and consummation of the contract by which the appellant took over the business and property of the Iowa Company. When the contract between the two companies was consummated the liability of the Iowa Company for the damages thereby resulting to the respondents was complete. This liability was not contingent; it was absolute. As already stated, the amount of the damages which the

respondents can recover and the rule by which they are determinable do not require consideration upon this appeal.

The facts pleaded for a second cause of action entitle the plaintiffs to recover at least the commissions due at the date of the transfer.

The order is affirmed.