# GRACE D. ISRAEL v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.[1]

July 15, 1910.

Nos. 16,607—(150).

**Liability after rendering performance of contract impossible.**
   The rule that, when a party to an agreement voluntarily places it beyond his power to perform, he is liable to the other in an action for damages

[1] Reported in 127 N. W. 187.

for the anticipatory breach before the time of performance arrives, applies to a contract between an agent of a life insurance company, when the latter sells out its business and thereby incapacitates itself to fulfil its obligations to its policy holders, and to collect premium notes upon which the agent's commission depends. Crowell v. Northwestern Nat. Life Ins. Co., 99 Minn. 214, followed, and Moore v. Security Trust & Life Ins. Co., 168 Fed. 496, distinguished.

#### Same — liability of assignee.

A life insurance company, which purchases the business and assets of another life insurance company, and agrees to underwrite, assume, reinsure, and guarantee all of the insurance or investment contracts and policies of the selling company, thereby becomes liable to an agent of the selling company in an action to recover the present damages occasioned by the breach of the contract by the sale, and the burden is upon the purchasing company to show that the policy holders did not reinsure, or that they were insolvent.

#### Same — presumption.

In such an action, brought by the agent against the purchasing company, the makers of instalment premium notes are not presumed to be insolvent with respect to instalments not due, although at the time of the sale one or more instalments had become due and were not paid.

Action in the district court for Hennepin county by the administratrix de bonis non of the estate of Francis M. Israel, deceased, to recover $8,000 for commissions earned in the service of defendant's assignor by plaintiff's intestate and for damages to the business of the intestate caused by the assignment. The substance of the answer, which alleged a counterclaim of $182.17, is stated in the opinion. The reply was a general denial. The case was tried before Booth, J., who made findings and ordered judgment in favor of plaintiff in the sum of $1,824.41. From judgment entered pursuant to the order, defendant appealed. Affirmed.

*John T. Baxter* and *Daniel Fish,* for appellant.
*Jay W. Crane* and *C. H. Slack,* for respondent.

LEWIS, J.

On and prior to the month of June, 1902, the Northwestern Life & Savings Company, of Des Moines, Iowa, was a corporation engaged in the business of life insurance. Respondent's intestate was

operating as its exclusive agent in the state of Michigan, under a contract executed on June 25, 1902, which provided that either party might terminate the agreement thirty days after giving the other notice to that effect, after May 1, 1903. While this contract was still in force and on August 22, 1903, the Iowa company entered into a written contract with appellant, a Minnesota corporation, whereby the latter agreed to "underwrite, assume, reinsure, and guarantee all of the insurance and investment contracts and policies" of the Northwestern Life & Savings Company already issued or thereafter to be issued upon applications already made, and agreed to pay all valid legal outstanding contractual liabilities of such company. The Iowa company transferred its business and assets in the following terms: "The party of the second part, in consideration of the foregoing, hereby sells, transfers, assigns, and conveys to the party of the first part all of its mortgage loans, notes and collaterals, accounts, cash, agents' balances, and other evidences of debt or credit, and all leases, furniture, and fixtures, and all and singular its property and assets of every kind and character whatsoever and wheresoever situate." Before the execution of this contract, Mr. Israel had procured applications, with which notes had been given by the insured for first-year premiums aggregating $4,400, and according to his contract with the Iowa company, if the notes were paid to that company while still in business, he would have been entitled to receive commissions thereon amounting to $1,425.01. His contract provided that no commission became due until the premiums were paid in cash, and he was required to collect all premiums at his own expense.

This action was brought by respondent, as administratrix, against the Minnesota company; for the purpose of recovering damages for the breach of his contract of agency by the sale and transfer of the business to the Minnesota company, which liability, it is claimed, the latter company assumed. The answer admitted the execution of the contract of purchase, and that it became the owner of the notes which had been taken by the Iowa company for premiums upon policies issued by it, and pleaded a counterclaim of money collected by Mr. Israel for appellant upon notes which had been sent to him

for that purpose. · The trial court found that there had been pro-
cured to be written by Mr. Israel, between June 25, 1902, and Au-
gust 23, 1903, for which there had been received and accepted by
the Iowa company as and for the first year's premiums on such
policies notes aggregating in amount $4,400, which notes and parts
of notes became due after August 22, 1903, and were unpaid on
that date; that all of such notes were transferred by that company
to appellant under the contract of purchase, and that the commis-
sions of Mr. Israel thereon, which became due after August 22 and
were unpaid on that date, amounted to $1,425.01; and the court
also found a counterclaim in favor of appellant to the extent of
$90.07 on account of moneys on notes collected by Mr. Israel for
appellant.

1. According to the bill of exceptions, appellant introduced no
evidence, but at the close of respondent's case moved the court to
dismiss the action. The motion was denied, and the judge stated
that he felt bound to follow the decision of this court in Crowell v.
Northwestern Nat. Life Ins. Co., 99 Minn. 214, 108 N. W. 962,
but intimated that if the question were a new one he would be in-
clined to follow Moore v. Security Trust & Life Ins. Co., 168 Fed.
496, 93 C. C. A. 652. That case was decided two years later than
the Crowell case, and appellant insists that the latter case should
be modified or overruled to comply with the principles there an-
nounced.

The Crowell case involved similar contracts between the same
companies as are involved in the present action, and the question
came up on demurrer to the complaint. The agency of Crowell
was not at will. His contract was executed for a definite term, and
had not been terminated when the business was sold out. That ac-
tion was brought to recover damages for the loss of commissions
which the agent had earned at the time of the sale, and two questions
were decided: (1) That while the Iowa company remained in busi-
ness the obligations represented by the premium notes were abso-
lute, and presumably collectable, but after the transfer of its busi-
ness to another corporation the maker of those notes could not be
compelled to pay them, unless they voluntarily reinsured in the pur-

chasing company; that, having put it out of its power to perform its part of the contract as between it and the agent, the latter was at liberty to treat the contract as terminated and recover whatever damages he had sustained. The authorities cited for this proposition were United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, and Lewis v. Atlas, 61 Mo. 534. (2) That the purchasing company assumed and agreed to pay all valid, outstanding, contractual liabilities of the Iowa company.

We do not consider the two cases in conflict. The Moore case involved a contract at will between the agent and the insurance company, and the action was brought by the agent, not against the purchasing company, but against the selling company, upon the theory that, having terminated the contract by parting with the business, the agent had a right to treat its contract as broken and recover damages therefor. The court announced the rule that a principal may revoke an agency and renounce the appointment of an agent, in the absence of an agreement that it shall continue for a specific term, and that the exercise of the right to terminate its business is not a breach of a contract of agency which contains no agreement forbidding or limiting the exercise of the right to discontinue. That the decision was based upon the fact that the contract of agency was one at will is evident from the following expression in the course of the opinion: "This conclusion is not necessarily inconsistent with the position that, where an insurance company makes an express agreement to employ an agent for a specific term and to pay him commissions during that term upon the business he secures, it breaks the agreement and subjects itself to all the damages which naturally flow from that breach by transferring its property to another and abandoning its business during the agreed term."

In the case at bar the agency was fixed for a specific term, and we adhere to the ruling that the Iowa company made itself liable in damages as of that date by putting it beyond its power to comply with the agency contract by selling out the business.

2. With reference to the second question involved in the Crowell case, all that was decided was that on the face of the complaint the Minnesota company became liable to the agent for such commissions

as he had earned. Under the contract of purchase, and the facts stated in the complaint, the agent was entitled to recover, for the reason that the purchasing company had agreed to reinsure all of the policy holders, and had taken an assignment and transfer of all of the notes upon which the agent's commission was based. Those notes were in its possession, and the company was in a position to know whether the policy holders had reinsured, and whether the notes were collectable. Those were matters of defense, which it was required to plead and prove in order to defeat the agent's prima facie claim for commission. In the present case, however, none of these questions were raised by the answer, and no evidence whatever was offered by the defense at the trial, and judgment was ordered upon the evidence of the plaintiff. Consequently upon this appeal the question before the court is, not what the plaintiff might have proven as a defense, but whether the evidence produced by plaintiff made out a prima facie case.

3. Included in the total of $4,400 were instalments of first-year premium notes aggregating $1,896.33, upon which, if paid, the commission would have amounted to $760.84. These instalments fell due after August 22, 1903, but upon the same notes there were then overdue and unpaid one or more prior instalments. The question is: Did the presumption of insolvency arise on the part of the makers of such notes, it appearing that default had been made in one or more instalments? If each instalment be treated as an independent obligation to pay, then the presumption of insolvency should not apply to those instalments not due. But, if each note be treated as an entirety, then there is some difficulty in making a distinction between instalments due and those not due. As between a purchaser of an instalment note and the maker, the note is overdue and unpaid, and the purchaser takes it subject to all the equities between the original parties. Vinton v. King, 4 Allen, 562. Appellant cites this case as sufficient authority for holding that as to all these instalment notes the presumption of insolvency applied, and that the burden was upon respondent to prove the contrary.

Although the question is not free from doubt, we conclude to agree with the trial court that, under the peculiar circumstances of

the case, appellant should assume the burden of showing the facts. As before stated, it had possession of the notes, and knew whether they had been paid, or whether the makers were insolvent.

Affirmed.