MITCHELL ET AL., APPELLANTS, *v.* BANKING CORPORA-
TION OF MONTANA ET AL., RESPONDENTS.

(No. 6,325.)

(Submitted December 10, 1928. Decided January 19, 1929.)

[273 Pac. 1055.]

*Mr. C. E. Pew,* for Appellants, submitted a brief and argued the cause orally.

*Mr. E. C. Day, Mr. Henry C. Smith, Mr. Paul W. Smith, Mr. David R. Smith, Mr. Ulysses A. Gribble, Messrs. Stewart & Brown, Mr. F. W. Mettler, Mr. Edward Horsky, Mr.*

586

George W. Padbury, Jr., Mr. H. S. Hepner, Mr. T. B. Weir, Mr. Harry P. Bennett, Mr. R. R. Purcell, Messrs. Walsh & Nagle, Mr. W. D. Rankin, Mr. J. Miller Smith, Mr. G. W. Pierson, Messrs. Brown, Wiggenhorn & Davis, Messrs. Grimstad & Brown, Mr. G. Y. Patten, Mr. R. G. Wiggenhorn, Mr. Walter Aitken, Messrs. Shea & Wiggenhorn, Mr. H. M. Stewart, Mr. H. A. Bolinger, Mr. Walter L. Pope, Messrs. Templeman, Sanner & Furman, Messrs. Jones & Jones, Mr. John G. Skinner, Mr. E. G. Toomey, Mr. Robert L. Clinton, Messrs. Black & McDonald, Messrs. Arnot & Doyle, Messrs. Gilbert, Gilbert & McFadden, Mr. George W. Magee, Mr. S. P. Wilson, Mr. W. E. Keeley, Messrs. Freeman, Thelen & Frary, Mr. Roy E. Ayers, Mr. J. A. McDonough, Mr. D. M. Durfee, Messrs. O'Hara & Madeen, Mr. J. D. Taylor and Mr. M. M. Duncan, for certain Respondents, submitted an original brief as well as one on motion to dismiss appeal and one on motion to strike certain portions of transcript; Mr. Day and Mr. Horsky argued the cause orally.

*Mr. S. C. Ford, Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for certain other Respondents, submitted a brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On rehearing, the opinion herein, by Mr. Justice Stark, promulgated July 24, 1928, is withdrawn and the following opinion substituted therefor.

On July 27, 1925, A. D. Mitchell, Grace Mitchell and Martin Clancy commenced action to have declared invalid an attempted reduction of the capital stock of the defendant Banking Corporation (hereinafter called the bank) and to enforce the statutory liability of the stockholders of that institution, after its insolvency, on the basis of the original capital stock, in order to create a fund to be applied toward the payment of the claims of plaintiffs, as creditors of the bank and some 2,500 other creditors in like situation.

The complaint shows that the receiver enforced liability on the basis of the reduced capital stock and refused to join plaintiffs in this action but was joined as a defendant by permission of the court having jurisdiction over the receivership.

All owners of stock, at the time of the attempted reduction and at the time of the bank's failure, were made defendants and many of these demurred to the complaint; the demurrers were sustained and, plaintiffs refusing to plead further, judgment of dismissal was entered. Plaintiffs attempted to appeal from the judgment but the attempt was abortive and was dismissed in February, 1928 (*Mitchell* v. *Banking Corporation*, 81 Mont. 459, 264 Pac. 127), and thereafter within the statutory time, this appeal was taken.

1. Defendants have interposed a motion to strike certain portions of the transcript on appeal on the ground that they are not parts of the judgment-roll and were not made parts of the record by bill of exceptions. Without entering into a discussion of this motion, it is sustained as well taken.

2. Defendants have moved to dismiss the appeal on numerous grounds. This motion has been duly considered, but

no good purpose would be served by recording our consideration herein; the motion is denied as being without substantial basis.

3. The demurrers were sustained chiefly upon the ground that the action was not timely, and it is now contended that this question cannot be raised by demurrer in the face of the provision that "the objection that the action was not commenced within the time limit can be taken only by answer." (Sec. 9065, Rev. Codes 1921.) This action, however, does not come within the provision quoted; it is an action to enforce a statutory liability by the exercise of a right granted by statute and which did not exist at common law. (*Pollard* v. *Bailey*, 20 Wall. (U. S.) 520, 22 L. Ed. 276.) In such a case the limit of time prescribed does not affect the remedy merely, but is of the essence of the right itself, and one who seeks to enforce such a right must show affirmatively that his action is timely. (*Dolenty* v. *Broadwater County*, 45 Mont. 261, 122 Pac. 919.) Allegations of fact showing that the action was commenced within time are, therefore, a necessary part of the complaint, and, if these allegations are insufficient in this regard, the defect may be challenged by demurrer.

4. Does the complaint show on its face that plaintiffs' right to enforce the stockholders' liability was exercised within the time prescribed by law?

The essential allegations on which this question must be determined, briefly stated, are as follows: The bank was incorporated, prior to 1914, with a capital stock of $500,000, evidenced by 5,000 shares of the par value of $100 each. During the period from 1914 to 1919 plaintiffs made time deposits in the bank aggregating more than $40,000, for which certificates of deposit were issued and thereafter renewed from time to time, the final renewal certificates being issued in March, 1922.

The deposits were never withdrawn and the bank never refused payment, but it did postpone payment subsequent

to March, 1922, for its own convenience. On February 28, 1922, a resolution was duly passed at a called meeting of the stockholders for the reduction of the capital stock to $250,000, evidenced by 2,500 shares of the par value of $100, and a certificate therefor was filed in the office of the clerk and recorder of Lewis and Clark county, at which time the bank was indebted to plaintiffs for the full amount of their deposits, which condition continued unaltered until May 2, 1923, when the bank failed to open for business and, on appropriate proceedings instituted, it was declared insolvent and Claude C. Gray duly appointed its receiver. The receiver allowed claims for the full amount of plaintiffs' deposits but has no available assets for their payment, and no part thereof was paid except an amount equal to fifteen per cent of the claims, which was paid as a fifteen per cent dividend to all creditors in like situation, realized from funds received from the stockholders on the liability enforced on the basis of the reduced capital stock.

The right of both the receiver and the creditors to enforce payment of corporation debts by stockholders is found in section 6036, Revised Codes of 1921, as amended by Chapter 9, Laws of 1923. The original section provides, in part, that "the stockholders of every bank shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts and engagements of such corporations, to the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." The amendment of 1923 authorized a receiver, on liquidation of a bank by a court, to recover the amount of such liability by appropriate proceedings for the benefit of the creditors and distribute the amounts collected to the creditors "without diminution."

The provisions of the original statute were first adopted as a part of the "Banking Act" of 1915 (Chap. 89, Laws of 1915), and it will be noted that they deal only with the stockholders of banks and that the Act itself does not fix

any time within which a creditor shall seek to enforce the liability, the time when the liability attaches nor when any limitation of time shall begin to run in favor of the stockholders.

The liability imposed by the statute is, however, as noted above, purely the creature of the statute, and the statute, of necessity, grants a right of action to the creditors and against the stockholders for the enforcement of the liability, and in order to avail themselves of the remedy afforded, creditors must bring themselves within the provisions of section 9061, Revised Codes of 1921, which existed as section 6471 of the Codes of 1907, at the time the Banking Act was passed. This Act provides that the general limitations found in the Codes "do not affect actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by law, but such actions may be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty of [or] forfeiture attached or the liability was created." In such an action as this, section 9061 controls and the period begins at the time the liability "was created," without regard to "discovery" (*Brown* v. *Roberts*, 78 Mont. 301, 254 Pac. 419); but doubt as to when such an action must be commenced to enforce the liability imposed by section 6036 arises from the fact that the legislature in enacting section 9061 departed from the familiar limitation of time "after the cause of action has accrued," and employed in lieu thereof the phrase "after * * * the liability was created." When was the liability here sought to be enforced "created?"

To "create" means to bring into being that which did not exist before (Webster), and, as stockholders are not liable for the debts of their corporations unless or until such a liability is imposed on them by the legislature, this liability may, in a sense, be said to have been created by the statute which imposes it (*Pollard* v. *Bailey*, above; *Hawkins* v. *Iron*

*Valley Furnace Co.,* 40 Ohio St. 507); but to construe the term in this sense would lead to the absurdity of declaring that section 6036 became a dead letter three years after it was enacted and that, to have kept it alive, the legislature should have re-enacted its provisions before the expiration of each three-year period thereafter.

Manifestly, then, something more than the passage of the Act is necessary for the "creation" of this liability, and this fact is recognized by counsel for defendants who do not suggest the absurd situation last outlined; they do insist, however, although there is no intimation of such intention in the Act itself, that the liability attaches, and is therefore created, when a customer makes a deposit in a bank, and that the liability thus attaching is "primary, absolute and unconditional" and lapses with the expiration of three years, even though no cause of action may have accrued and no action could have been brought to enforce the liability during that period. In other words, we are asked to hold that, because a former legislative body used the peculiar phraseology now under consideration, the rights of creditors to the protection afforded them by section 6036 may be lost before they come into being. To say that the legislature intended that such a situation might arise under section 6036 would be as absurd as to hold that the liability is created by the passage of the Act imposing it, and counsel for defendants do not contend that such was the intention of the legislature, but only that such is the necessary result of a proper construction of the legislative Acts considered. In this position they are supported by a long line of decisions in California, beginning with *Hunt* v. *Ward,* 99 Cal. 612, 37 Am. St. Rep. 87, 34 Pac. 335, construing a statute identical with our section 9061, in connection with their statute similar to, but not identical with, our section 6036. However, according to their decisions, the California statute imposes a *primary* liability and that liability is upon a contract for the direct payment of money and will support an attachment of the stock-

holders' property. (*Aronson* v. *Pierson,* 199 Cal. 286, 51 A. L. R. 1380, 249 Pac. 188; *Fry* v. *Baltimore Hotel Co.,* 80 Cal. App. 415, 252 Pac. 752.)

There is a great diversity of expression in the several statutes making stockholders individually liable to creditors for corporate debts and, consequently, an authority under one statute imposing this liability may not be an accurate guide for the construction of another statute on the subject; all such statutes are, rather, to be construed by the ordinary rules of construction, according to the language used and the legislative intent in connection with their statutes on the same subject in the same jurisdiction. (6 Thompson on Corporations, sec. 4787.) It is, however, broadly stated by the author of the above work that this liability is now held and recognized generally as primary, and not secondary, and may be enforced without any proceedings against the corporation unless such proceedings are made a condition precedent (Id., sec. 4912). This statement is based largely on the California decisions.

In New York the liability is held to be contractual and secondary, in the nature of that of a surety (*Close* v. *Potter,* 155 N. Y. 145, 49 N. E. 686). In Kansas it is said to be contractual but separate and collateral to the liability of the corporation and, while not in all respects that of a surety, it is sometimes treated as such (*Pacific Elevator Co.* v. *Whitback,* 63 Kan. 102, 64 Pac. 984). The liability imposed by the Washington statute—similar to ours—is declared to be secondary, in *Wilson* v. *Book,* 13 Wash. 676, 43 Pac. 939, wherein many like decisions from other states are collected in the published brief of counsel. In Missouri it is said that this liability becomes a part of the stockholder's contract on purchase of stock and "is therefore, in legal effect, a promise to answer to corporate creditors in proportion to the value of stock one holds—an implied contract to pay the company's debts if the company itself cannot," citing *Brown* v. *Hitchcock,* 36 Ohio St. 667; *First Nat. Bank* v. *Hawkins,*

174 U. S. 364, 372, 43 L. Ed. 1007, 19 Sup. Ct. Rep. 739; such a liability is that of a guarantor. (Sec. 8171, Rev. Codes 1921.)

Finally, under the head of "Liability imposed by some statutes is that of surety or guarantor," Mr. Thompson, in section 4814 of his work, above, says: "The promise of a stockholder to pay the corporate debt has been held to be in every sense to pay the debt of another, and this case cannot be different merely because the obligation is statutory," citing decisions from many jurisdictions. This, of course, means that the stockholder is a guarantor.

It is, therefore, apparent that the California rule above stated is by no means the general rule and whether, under that rule, action would lie against the stockholders without first exhausting the remedy against the corporation, or not, it is there held that the right of the creditor may be lost by expiration of the period prescribed (three years) by their statute identical with our section 9061. If their statute does in fact impose an unconditional primary liability which arises upon a contract for the direct payment of money, as declared, it would seem that, logically, that court should hold, as did the supreme court of New York in construing direct liability statutes, that the limitation of actions on statutory liability had no application, but that the time within whch such an action should be commenced is governed by the statute of limitations on actions on contract. (*Corning* v. *McCullough,* 1 N. Y. 47; *Christensen* v. *Quintard,* 43 N. Y. 334; *National Park Bank* v. *Remsen,* 55 N. Y. 144); such an interpretation of the two statutes jointly would at least give effect to the apparent legislative intent that the creditors be protected from loss by reason of the failure of a bank, by removing from the stockholders the exemption from personal liability which follows upon incorporation generally, and that the stockholder is burdened by payment only in case of default of the bank.

Counsel for defendants do not contend that the California rule conforms to the intention of the legislature, but they insist that its adoption is compelled by the wording of the statute. However, statutes should be given an interpretation best calculated to carry out the actuating thought in the mind of the legislature at the time of their passage (*Brown* v. *Roberts*, above), and if the statutes before us can be so interpreted as to carry out, rather than do violence to, the legislative intent, it is our duty to give them that interpretation.

While this court has never been called upon to determine when the statute begins to run in favor of stockholders and against an action on their double liability, or otherwise, we have at least three statutory liabilities imposed upon stockholders and directors of corporations to which section 9061 may be applied, and in numerous decisions construing these provisions we have departed from the California rule as to the nature of the liability and adhered to the rule announced by those courts declaring it to be in the nature of a guaranty.

Thus in *Muri* v. *Young*, 75 Mont. 213, 245 Pac. 956, following *McClaine* v. *Rankin*, 197 U. S. 154, 49 L. Ed. 702, we held that the liability imposed by section 6036 is not primary, but is "secondary" to the debts of the bank "which debts remain distinct and to which the stockholder is not a party," and, quoting from *Barth* v. *Pock*, 51 Mont. 418, 155 Pac. 282, we there said that the creditor has a double security, as "he may look to all of the assets of the bank in the first instance and, if they are not sufficient, he may call on the stockholders to contribute a fund which may equal the par value of the entire authorized capital; the liability of the stockholder being in the nature of a guaranty, a promise to answer for the debt, default or miscarriage of another," and, as such, is not for the direct payment of money and will not support an attachment. (*Ancient Order of Hibernians* v. *Sparrow*, 29 Mont. 132, 101 Am. St. Rep. 563, 64 L. R. A. 128, 74 Pac. 197; *Square Butte State Bank* v. *Ballard*, 64

Mont. 554, 210 Pac. 889.) We have examined the authorities upon which this decision is based and are convinced that the decision is sound.

In the case of *Kelly* v. *Clark*, 21 Mont. 291, 69 Am. St. Rep. 668, 42 L. R. A. 621, 53 Pac. 959, and *King* v. *Pony Gold Min. Co.*, 28 Mont. 74, 72 Pac. 309, this court construed the statute, now section 5966, Revised Codes 1921, imposing liability upon stockholders "until the whole amount of the capital stock subscribed for shall be paid in" as imposing a liability secondary to that of the company for its debts, and held that the remedy against the stockholders did not accrue until the remedy against the company had been exhausted.

In *Williams* v. *Hilger*, 77 Mont. 399, 251 Pac. 524, we applied section 9061 to the liability of directors for the obligations of their corporations on failure to file an annual report required by section 6003, and held that, while the liability was direct and primary, it was not "created" at the inception of the relation of debtor and creditor, but arose on default and the period fixed in section 9061 began to run from the date of default.

As we have consistently and correctly held that the statutory "double liability" of stockholders, whether in commercial or banking corporations, is not primary but secondary, and, while contractual in its nature, it is not a contract for the direct payment of money, counsel's contention that the liability is "primary, absolute and unconditional" is without merit and the California decisions based upon a primary liability statute are neither controlling nor persuasive. We must, therefore, look further for the proper construction of the phrase "after * * * the liability was created."

This phrase seems to be peculiar, at the present time, to the statutes of California and Montana. It appeared in a similar provision of the "Field's Code" and was adopted in New York in 1830, but was discarded in 1877 for the more appropriate or understandable phrase "after the cause

of action accrues" (Bliss Ann. Code, sec. 394); but we have found no New York decisions to aid us, due, probably, to the construction of the liability statute of that state, as above noted, compelling the application of the statute of limitations governing actions on contract. We must, therefore, rely upon the familiar rules of construction of statutes and the meaning of the words employed, for the construction of the phrase.

Counsel for defendants contend that, in so construing the statute, even though the liability is held to be secondary, it was created at the time the debt was created and the period of limitation must be held to have expired three years after that date, although no cause of action accrued on this liability, unless this court inserts in section 9061 the word "actionable" before the word "liability," or by some other appropriate method so reforms the statute that it will, in effect, cause the statute to conform to other statutes of limitation which begin to run from the accrual of a cause of action. This, of course, we cannot do; our function is to interpret the law, not to legislate; if such reformation of the statute is necessary or desirable, relief must come from the legislature and not from the courts.

In the language of Mr. Justice Livingston, of the supreme court of the United States: "The court disclaims all right or inclination to put on the statutes of limitation, which are found to be among the most beneficial to be found in our books, any other construction than their words import. * * * When the will of the legislature is clearly expressed, it ought to be followed without regard to consequences; the spirit should never be resorted to but where the expressions are so ambiguous as to render such mode of interpretation unavoidable." (*Fisher* v. *Harnden,* 1 Paine, 61, Fed. Cas. No. 4819.)

As above noted, section 6036 has already been construed to mean that, as guarantors, the stockholders may only be compelled to respond to the liability imposed on default of

the bank. The difficulty arises over the wording of section 9061, as applied to the enforcement of the liability. The intention of the legislature, with regard to the remedy afforded, might have been more clearly expressed by the adoption of the phraseology of the New York statute imposing the liability, which reads: "Whenever default shall be made in the payment of any debt or liability contracted by any corporation * * * [organized] for banking purposes, * * * the stockholders shall be individually responsible, equally and ratably," etc. (Rev. Stats. 1880, p. 1419); or, as to the limitation, the Ohio provision that "an action upon the liability of stockholders can only be brought within eighteen months after the debt or obligation has become enforceable against the stockholders" (sec. 3258, Ohio Stats.). But do not the words of section 9061 "import" the idea embodied in each of the New York and Ohio statutes, when given their proper definition as they are used in the statute?

The term "liable" is given many shades of meaning and definition; in an academic sense it may be used to denote exposure to a future contingency or casualty, as one is liable to an accident (Webster); and, in a legal sense, dependent upon its use, "liability" may include obligations "which may or may not in the future eventuate in indebtedness" (*Daniels* v. *Goff*, 192 Ky. 15, 232 S. W. 66), or may refer to an obligation "to do at once or at some future time something which may be enforced by action" (*White* v. *Green*, 105 Iowa, 176, 74 N. W. 928), and in *Cochran* v. *United States*, 157 U. S. 286, 39 L. Ed. 704, 15 Sup. Ct. Rep. 628, it is said: "We know of no definition of the word 'liability' either given in the dictionaries or as used in the common speech of man, whch restricts it to such as are absolute, or exclude the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or errors."

But the definition given in Bouvier's Law Dictionary and which has received recognition by the courts in *Feil* v. *City of Coeur d'Alene*, 23 Idaho, 32, 43 L. R. A. (n. s.) 1095, 129 Pac. 643, and *Pillar* v. *Southern Pac. Ry. Co.*, 52 Cal. 42, is: "Responsibility; the state of one who is bound in law and justice to do something which may be enforced by action." Such a definition harmonizes the provisions of section 9061 with the clear intention of the legislature in the enactment of section 6036 and vitalizes the latter section; it contains the actuating idea of actionable liability without importing into the section the word "actionable," as suggested by counsel, and is in harmony with our former decisions construing the liability of stockholders. Thus in the case of *Ancient Order of Hibernians* v. *Sparrow*, above, it is said that the surety on the undertaking under consideration "became liable" only on condition that the principal defaulted. In *Square Butte State Bank* v. *Ballard*, above, it is said that the "liability" of a guarantor "is not immediate and does not fix upon the promisor a liability from the beginning, but only upon the default of the principal"; and again: "his liability does not start with the agreement, except as a contingent liability, and that is established for the first time by the default." In other words, the liability of stockholders is "created" by statute only in the sense that, except for the statute, it would not exist (*Platt* v. *Wilmott*,—construing New York statute,—193 U. S. 602, 48 L. Ed. 809, 24 Sup. Ct. Rep. 542); it is not brought into being by the enactment of the statute and comes into existence, as an inchoate liability only, at the inception of the relation of debtor and creditor between the bank and its customer; at that time the stockholders became "liable," in the academic sense, to "become liable," in the legal sense, on default of the bank, but this legal liability—which is actionable liability—attaches only, as in the case of any guarantor, on default of the principal.

It, therefore, follows that the liability of the stockholders of the bank was not "created," in the sense in which the term is here used, until the failure of the bank on May 2, 1923, and, consequently, the complaint shows on its face that the action was commenced within the statutory period prescribed.

5. The second point raised as to the sufficiency of the complaint is that it does not show an existing liability of the stockholders, in that the purpose of this action is to subject the stockholders to the payment of amounts equal to the par value of the shares of stock canceled and retired by certificates of reduction of the capital stock authorized by the vote of the stockholders on February 28, 1922, which certificates, copies of which are made a part of the complaint, show on their face that the reduction was legally made. .

The action with regard to the reduction of the capital stock was taken pursuant to the provisions of the "Banking Act," Chapter 89, Laws of 1915, as amended by Chapter 148, Laws of 1917, which now appears in appropriate sections of the Revised Codes of 1921. Thereunder any bank is authorized to increase or diminish its capital stock "to any amount which may be deemed sufficient and proper for its purposes within the limits prescribed," by complying with the provisions of the Act (sec. 6030, Rev. Codes 1921). The steps to be taken are prescribed by section 6033, and if the resolution receives the requisite number of votes, "a certificate of the proceedings showing a compliance with the provisions of this Act, the amount of capital stock actually paid in, the whole amount of the debts and liabilities of the corporation, the amount to which the capital stock shall be increased or diminished * * * shall be made out, signed and verified by the affidavit of the chairman, and countersigned by the secretary, and such certificate shall be acknowledged by the chairman and filed and recorded as required by section 8 of the Act, and when so filed and recorded, the capital stock of

such corporation shall be increased or diminished to the amount specified in such certificate.'' (Sec. 6034, Id.)

Section 8 of the Act, now section 6021, Revised Codes of 1921, prescribes the steps to be taken on incorporation, including the submission of the ''articles of agreement,'' to the superintendent of banks and securing from him his certificate of authorization, in duplicate, and requires that ''the articles of agreement, together with one of such certificates of authorization, so issued, shall be filed in the office of the clerk and recorder * * * and a certified copy of the articles of agreement, together with the other certificate of authorization * * * shall be filed with the secretary of state.'' Under the express provisions of the ''Banking Act'' the certificate ''filed and recorded as required by section 8 of this Act'' automatically effects a reduction of the capital stock, provided the bank has complied with the provisions of the Act.

Counsel for plaintiffs asserts that the complaint, of which copies of the certificates filed are made a part, shows that the bank did not comply with the provisions of the Act, in the following particulars: (a) The first certificate filed made no mention of the debts and liabilities of the bank; (b) the second certificate filed was not ''acknowledged''; (c) neither certificate was recorded; (d) no certificate of authorization by the superintendent of banks was filed with either certificate; (e) no certified copy of the certificate filed was filed with the secretary of state, and (f) the bank was insolvent at the time of the passage of the resolution or reduction, and all of the assets of the bank and the liability of the stockholders were necessary for the ''purposes'' of the bank in discharging its indebtedness, of which plaintiffs' claims were then a part.

''Where a statute gives a right and prescribes a remedy, the statutory remedy must be strictly pursued; hence it follows that, as there can be a reduction of the capital stock of a corporation only on express statutory authority,

the method prescribed by the statute must be followed." (5 Thompson on Corporations, 3d ed., sec. 3688.)

A reduction of the capital stock of a corporation is an amendment to the articles of incorporation—"a fundamental change in its affairs" (*McNulta* v. *Corn Belt Bank*, 164 Ill. 427, 45 N. E. 954), and strikes at the very foundation of its credit, its assets and stockholders' liability, on which its customers have a right to rely in extending credit to the corporation and on the preservation of which they have a claim so long as their accounts remain unpaid (5 Thompson on Corporations, above, sec. 3685); a compliance with the provisions of the statute granting the right to reduce the capital stock is, therefore, a condition precedent to reduction (see *Merges* v. *Altenbrand*, 45 Mont. 355, 123 Pac. 21), and reduction can only be accomplished in the manner prescribed. (*Barnard Mfg. Co.* v. *Ralston Mill. Co.*, 71 Wash. 659, 129 Pac. 389.)

Measured by these principles, we will consider the objections to the proceedings for reduction in the order mentioned.

(a) As the first certificate failed to state "the whole amount of the debts and liabilities" of the bank, it was clearly insufficient.

(b) Section 6033, above, contains the double requirement that the certificate of reduction "shall be signed and verified by the affidavit of the chairman * * * and such certificate shall be acknowledged by the chairman."

Each of these requirements has a distinct purpose in the execution of an instrument; the verification of the instrument is "the certificate that the writing is true" (Bouvier's Law Dictionary); to verify is "to confirm and substantiate the oath." (*Witt* v. *Swift*, 34 How. Pr. (N. Y.) 264.) An acknowledgment, in the sence in which it is used here, is "an admission before an authorized court or officer, by the person who has executed an instrument, that such instrument is his act and deed (1 C. J. 745; *Taylor* v. *United States*, 45 Fed. 531). The function of an acknowledgment is two-

fold: to authorize the instrument to be given in evidence without further proof of its execution, and to entitle it to be recorded. (Bouvier's Law Dictionary.) Ordinarily the absence of an acknowledgment does not affect the validity of the instrument and an unacknowledged instrument is perfectly valid and effective, as between the parties and as against all persons not within the protection of the Recording Acts, but it is within the power of the legislature to prescribe an acknowledgment as an essential prerequisite to the validity of the instrument. (1 C. J. 748, 749.)

Here, as a reduction of the capital stock is an amendment to the articles of incorporation—the charter of the corporation—the instrument effecting the change should be executed with all the formality of the original instrument, and, while the "articles of incorporation" are required only to be filed, and not recorded, the legislature has seen fit to require that such articles shall be solemnly acknowledged by the parties thereto (sec. 6021, Rev. Codes 1921), and again, and in conformity with the requirements of original incorporation, that body has, in conformity with the Act for the creation of a corporation, required this solemn admission under oath that the making of the certificate is the act and deed of the chairman of the meeting at which a reduction is attempted or made.

Speaking of an increase in capital stock, which comes within the same provision of our statute as a reduction, Mr. Thompson in his work on Corporations, says that a substantial compliance with the statute is sufficient and in support of the text cites *Cuykendall* v. *Douglas,* 19 Hun (N. Y.), 577, *Man* v. *Boykin,* 79 S. C. 1, 60 S. E. 17, and *State ex rel. Cascade Bank* v. *Yoder,* 39 Mont. 202, 103 Pac. 499. (Sec. 6030, above.) In a foot-note the author says that the *Yoder Case* holds that the increase is valid "though there was not a strict compliance with the law requiring six weeks' notice of the stockholders' meeting." In this he is mistaken; the holding in the *Yoder Case* is that the statute referring to the

six weeks' notice was not applicable and that the corporation complied with the appropriate statute.

In the *Cuykendall Case* it was held that, under circumstances similar to those in the case at bar, there was a substantial compliance with the requirement of acknowledgment, the court saying: "A certificate of acknowledgment is only required to be 'in substantial compliance' with the statute." But there is a vast difference between a substantial compliance with a requirement and an omission of one of the requirements of the statute.

In *Man* v. *Boykin,* the supreme court of. South Carolina held, in such a case as the one here made, that the *stockholders* could not evade liability on shares held by them by showing that they failed to file the certificate of *increase* of the capital stock in the office of the secretary of state. The plaintiff creditors had there extended credit on faith of the capital stock as increased and the doctrine of estoppel was therefore invoked against the stockholders. An increase or reduction of the capital stock, informally made, may be valid as be‧ tween the parties, but the courts always guard the rights of creditors of the institution and, therefore, while an *increase* so made may be upheld, a reduction will be more critically viewed and "a reduction of the capital stock is effected only when all statutory formalities have been complied with." (Cook on Stock and Stockholders, 3d ed., 393.)

As the chairman of the stockholders' meeting wholly failed to comply with the requirement of acknowledgment, we are of the opinion that the proceedings fell short of effecting a reduction of the capital stock, but there are more cogent reasons why those proceedings must be held of no effect, which will appear later.

(c) The complaint shows that the certificate was filed in the office of the clerk and recorder of Lewis and. Clark county; it is silent as to whether the instrument was recorded. However, while section 6034 provides that the

certificate shall be "filed and recorded," this is to be done only "*as* required by section 8 of this Act."

Section 8 of the Act, now section 6021, Revised Codes 1921, prescribes the method of incorporating and therein requires that the "articles of agreement" shall be filed in the office of the clerk and recorder of the county wherein is situated the principal place of business and that a certified copy thereof shall be "filed with the secretary of state," but does not require that the certificate be "recorded." The word "as" means "in the same manner with or in which" (Webster's New. Int. Dict.). Therefore, as the provisions of section 6021 control, the only requirement of section 6034 is that the certificate be "filed" as required by section 6021, and the loose use of the additional phrase "and recorded" may be disregarded as redundant.

(d) The filing of the certificate "as required by section 8" compels the filing of a certified copy of the articles with the secretary of state.

(e) Counsel for plaintiffs contends that the phrase "as required by section 8 of this Act" also compels the filing, with the certificate of reduction, of a certificate of authorization by the superintendent of banks.

While the designated procedure for the organization of a bank requires the submission of the proposition to the superintendent of banks, there is now no such requirement in the statutes respecting reduction of the capital stock. The Act of 1899 (sec. 4006, Rev. Codes 1907) expressly provided that "no reduction shall be made until the amount of the proposed reduction is reported to the state bank examiner and his approval thereof obtained in writing." Section 4006 dealt with reduction alone, while the preceding section authorized an increase in capital stock, and required the approval of the state auditor thereof. These provisions were repealed by the Banking Act of 1915 above, and in 1917 sections 6030 to 6034, inclusive, were enacted as an amendment to the Act of 1915; section 6030 united the provisions for increase and

reduction, as contained in sections 4005 and 4006 of the Codes of 1907, but omitted the requirement of submission of the proposition to either the state bank examiner (now the superintendent of banks) or the state auditor. We cannot read into the statute any provision not found therein and must assume that the legislature intended that submission be no longer required, no matter how important such a provision may seem for the protection of creditors, unless we can say that the requirement that the filing be made "as provided" in the case of articles of incorporation includes the filing of a certificate of authorization. As no submission to the superintendent of banks is required, there is no provision for securing a certificate of authorization for filing, and section 6021 does not require the filing of such a certificate as a part of the articles of agreement but merely "together with" that instrument. There is, therefore, no certificate of authorization to be filed "together with" the certificate of reduction, and in this respect the action taken was sufficient.

(f) The gravest charge made against the proceeding for ▮▮▮▮▮ reduction is that, at the time the attempt was made, the bank was insolvent, which fact was known to the stockholders, or should have been known by the exercise of reasonable diligence. The certificate shows that its liabilities then amounted to more than $2,000,000, while the complaint alleges that this amount exceeded its assets by more than half a million, and the plaintiffs were then creditors of the bank.

Section 6030 authorizes a reduction to "any amount which may be deemed sufficient and proper for the purposes of the bank"; one of the purposes of assets and capital stock being the discharge of just debts and liabilities. Dealing with this subject, without regard to the double liability of stockholders, Mr. Thompson in his work on Corporations, above, says: "The capital stock of a corporation should be kept intact, and especially it should not be reduced except for good cause. The capital stock of a corporation, particularly

in its early history, is the basis of its credit, and those dealing with it who become its creditors have a claim to the preservation of its capital stock. (Sec. 3685.) * * * "
In the absence of constitutional or statutory prohibition, "a corporation has an inherent right, for a bona fide purpose, to retire by purchase its capital stock, provided creditors are not injured thereby." (Sec. 3686.) And "a solvent corporation may, without doubt, under proper authority, reduce its capital stock and distribute to the stockholders either in money or property a sum equal to the amount of the reduced capital. The reduction of the capital stock of a corporation, not impaired by loss, must necessarily create a surplus of assets to the extent of such reduction, and, unless the rights of creditors are affected, or the capital impaired, it is said to be the duty of the directors to make an equitable distribution of the surplus." (Id., sec. 3695.)

Here it is alleged, and the allegations must be taken as true for the purpose of the demurrers that the purposes of the corporation required the retention of all of the assets of the corporation for the payment of debts and liabilities and, with the application of all thereof, there would still be an excess of liabilities amounting to more than $500,000. Further, according to the allegations of the complaint, the stockholders, in turning in their one-half of the stock to the corporation for cancellation, received nothing therefor and expected nothing in the way of distribution of surplus, which, Mr. Thompson says, follows necessarily from a proper reduction of the capital stock; the corporation parts with none of its assets and the only result of the attempted reduction, aside from lowering taxes, as suggested in the certificate, would be to relieve the stockholders from the one-half of their statutory double liability, on which the creditors had a right to rely when they deposited their money in the bank, and which attached as a definite liability, in the legal sense, on the insolvency of the bank.

Such attempted action is condemned in *Barth* v. *Pock,* above. The double liability runs from the stockholders, not to the bank, but to the creditors (6 Thompson on Corporations, sec. 4911; *Barth* v. *Pock,* above), and under section 6056, Revised Codes of 1921, it is declared that "no bank shall make any contract with any of its depositors whereby the stockholders' liability provided for in this Act is in any manner waived, and if any such contract shall be made, such contract shall be void." If the creditor himself cannot, by contract with the bank, relieve the stockholders of liability, how much less may the bank, acting through its interested stockholders, without the consent of the creditors, effect this relief?

"The statutory liability of shareholders is for the benefit of creditors of the bank which, at last bottom, consists of the stockholders" (2 Morse on Banks and Banking, 6th ed., sec. 696), and a stockholder "cannot be permitted to reduce the number of his shares even with the consent of the directors and stockholders, as against existing creditors." (6 Thompson, above, sec. 4943.) "It may be broadly stated that a reduction of capital stock will not be permitted to the injury of creditors," and where a reduction is made to the prejudice of existing creditors, they may proceed to enforce liability as though no reduction had been made." (Id., sec. 3701.)

If, then, as alleged in the complaint, the plaintiffs were creditors of the bank on February 28, 1922, and the bank was then insolvent and the continuation of the stockholders' liability was necessary for the protection of these and other creditors, which condition continued up to the time of the commencement of this action, clearly the stockholders could not relieve themselves of one-half of their then existing inchoate liability by declaring that the purposes of the bank did not require the retention of the full capital stock thereof in the stockholders, and they could neither effectively surrender the one-half of their stock for cancellation nor satisfy

their liability by payment of one-half of the par value of their original stock to the receiver.

The complaint states a cause of action and the court erred in sustaining the demurrers. The judgment is reversed and the cause remanded to the district court of Lewis and Clark county, with direction to overrule the demurrers.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE GALEN concur.

The terms of former JUSTICES MYERS and STARK, who sat on re-argument of this cause, expired before its determination.

Rehearing denied February 6, 1929.